**Maurice RAPF and Carl Hansen, Plaintiffs-Appellants,**

v.

**SUFFOLK COUNTY OF NEW YORK, Defendant-Appellee.**

**No. 376, Docket 84–7659.**

United States Court of Appeals, Second Circuit.

Argued Nov. 27, 1984.

Decided Feb. 15, 1985.

John J. O'Connell, New York City (Adam C. Barker, Webster & Shefield, New York City, Richard D. Friedman, New York City, of counsel), for plaintiffs-appellants.

Michael V. Corrigan, Simpson Thacher & Bartlett, New York City, for defendant-appellee.

Before TIMBERS, VAN GRAAFEILAND, and PIERCE, Circuit Judges.

PIERCE, Circuit Judge:

Appeal from a judgment of the United States District Court for the Eastern District of New York, John R. Bartels, *Judge,*

entered July 10, 1984, granting appellee Suffolk County's motion to dismiss appellants' complaint, pursuant to Fed.R.Civ.P. 12(b), as being barred by the applicable statute of limitations and by laches. Appellants allege that Suffolk County "constructed or caused to be constructed" groins along Barrier Beach in Southampton, Long Island, and that the County's failure to maintain the groins constitutes a continuing nuisance that threatens to destroy their homes and those of their neighbors. Appellee alleges that appellants' action is untimely according to N.Y.Gen.Mun. Law §§ 50–e and 50–i, governing tort claims against a municipality. Arguing that the cause of action for a continuing tort accrues anew each day, appellants contend that their action is not barred by the statute of limitations. Moreover, appellants contend that since no prejudice has resulted, their action is also not barred by laches.

We agree with the district court that the limitations period herein should be measured, pursuant to N.Y.Gen.Mun. Law § 50–e, from the date of the event upon which the claim is based. We conclude, however, that because a material issue of fact is in dispute and because appellee's motion should be treated as one for summary judgment, at this juncture in this case, the district court erred in granting appellee's motion to dismiss.

For the reasons stated below, we reverse and remand for further proceedings consistent with this opinion.

BACKGROUND

This action is part of an ongoing dispute between the parties which began in 1960 with a project designed to control beach erosion on the south shore of Long Island. Appellants, Maurice Rapf and Carl Hansen, individual homeowners of oceanfront property on "Barrier Beach" in Southampton,[1] bring this action on behalf of themselves and on behalf of a putative class of over 200 of their neighbors, to enjoin Suffolk County from continuing to maintain what appellants allege is a nuisance that threatens to destroy their homes and those of their neighbors.

In 1955, the United States Congress authorized a survey of hurricanes and hurricane damage in the eastern and southern United States, including the area involved in this action, and an examination of methods for minimizing the damage caused by erosion and storms. Pub.L. No. 84–71, 69 Stat. 132 (1955). As a result of this legislation, in 1960, the United States Army Corps of Engineers (the "Corps") submitted to Congress a report and general plan which concluded that one of the primary ill-effects of such storms has been the destruction of beaches and dunes.[2] The Corps recommended that a project be undertaken jointly by the United States, New York State, and Suffolk County to attempt to ameliorate some of these destructive consequences. The proposed project recommended providing beach and dune fill, raising the level of the sand dunes, planting dune grass, and building drainage structures.

To interrupt the flow of sand and inhibit erosion even further, the Corps also suggested the possibility of constructing a series of protective jetties along the beach, technically known as "groins."[3] The function of a groin is to trap sand deposited by

---

1. Appellants are individual homeowners on the west end of Dune Road in the Town of Southampton, Suffolk County, New York. The property bordering Dune Road, which runs in an east-west direction, is a strip of beach known technically as a barrier beach. The Barrier Beach, which in reality is a small island, is approximately 15 miles long and is bordered on the south side by the Atlantic Ocean and on the north side by Moriches and Shinnecock Bays. On the east end is Shinnecock Inlet and on the west end is Moriches Inlet.

2. *Cooperative Beach Erosion Control and Interim Hurricane Study, Atlantic Coast of Long Island, New York, Fire Island Inlet to Montauk Point,* House Document No. 425, 86th Cong., 2d Sess. (1960).

3. Groins are solid structures, often made out of stone, which are erected on a beach and extend out into a body of water in a direction perpendicular to the beach.

the current on the updrift side of the groin, i.e., on the side facing the current. According to appellants, however, as a result of trapping sand on the updrift side of the groin, the stretch of beach on the downdrift side facing away from the flow of the current, since it has a reduced flow of sand, becomes vulnerable to erosion by the current. Appellants contend that if the erosion becomes severe enough, a subsequent groin may be necessary to protect the affected downdrift side, thereby causing further erosion and requiring construction of yet another groin. Construction of the initial groin might therefore conceivably lead to a situation in which the entire coastline must be protected by groins.[4]

Although the precise construction method to be employed and the number of groins to be erected was to be left within the discretion of the Army Corps of Engineers, to be determined based on experience, H.Doc. No. 425 at 9, 10, 63, 777, according to appellants, the Corps clearly recognized the dangers inherent in the proposed project and therefore advised that, if groins were used, one of two alternative methods of construction should be followed. H.Doc. No. 425 at 61. Proceeding on the basis that the current, on the south shore of Long Island, flows from east to west, the first method consisted of constructing the initial groin at the west end of the Barrier Beach and then constructing the other groins in an easterly direction. This method of construction could not cause any erosion west of the last groin because there is no beach at that point. The second recommended method, to be used if construction of groins began at the east end, consisted of placing beach fill between the groins as they were erected. This method would prevent erosion in that the groin would trap very little sand as it flowed from east to west because the area

in between the groins already was filled with sand. Contrary to appellants' argument, appellee Suffolk County contends that the report of the Corps sets forth no precise recommendations relating to the construction of, or number of, groins, although the County does admit that the report recognized that "some limited groin construction might be found warranted initially in the most vulnerable locations." H.Doc. No. 425 at 59.

The project, as set out in H.Doc. No. 425, was authorized by Congress and approved on July 14, 1960. River and Harbor Act of 1960, Pub.L. No. 86–645, 74 Stat. 480 (1960). The project required three-party participation by the federal, state, and county governments. The contemplated role of Suffolk County was limited to contributing a portion of the funding required for the project, obtaining easements from landowners, and maintaining the project after completion. Id. at 484–86; Exec. Resolution No. 365–1963, Aug. 12, 1963. The State of New York was to submit specific assurances of local cooperation and also was obligated to provide funding. Id.

According to appellants, on August 20, 1963, New York State furnished the Corps with Assurance of Local Cooperation for a portion of the project. The plans provided for the construction of thirteen groins starting at the east end of Barrier Beach and extensive sand fill in between the groins. In the Assurance, the State agreed, among other things, to maintain all the works, to undertake periodic beach nourishment, and to adopt laws to preserve and restore beaches and dunes.

The Board of Supervisors of Suffolk County, however, refused to participate in the project as defined by the Assurance, objecting to the placement of the sand fill in between the groins. On February 3, 1964, the Board of Supervisors passed a

---

4. As appellants contend:

The real 'need' for a second or third structure may have been only temporary .... However, if additional structures are built, the down coast erosion becomes more severe with each succeeding structure, until finally a "point of no return" is reached where the need for additional protection from erosion becomes so urgent that the only choices are (1) to continue to build protective works, (2) to find a new source of beach sand, or (3) possibly a combination of both.

Imman, D.L. and Brush, B.M., *The Coastal Challenge,* 181 SCIENCE 29 (1973).

resolution approving only a limited project which included construction of eleven groins beginning at the east end of Barrier Beach without the placement of sand fill in between the groins.[5] Eventually, the federal and state governments acquiesced in Suffolk County's decision, despite the recommendations contained in the Corps' report, and construction of the first set of groins, beginning at the east, was completed in 1966.

Because of the subsequent depletion of sand from the western beach, the Corps, in a letter dated June 1, 1967, wrote to the State and urged that the "critically required dune and sand fill" be placed in between the groins. The State in turn, by a letter dated June 16, 1967, wrote to Suffolk County requesting the placement of beach fill in the existing eleven groin fields and the construction of four additional groins. Once again, Suffolk County objected to the placement of sand fill, however, beginning in 1968, a second field of four groins was authorized by the County and the State along the 6,000 feet of beach immediately to the west of the original eleven, with construction completed in 1970. To date, no further construction of groins on the Barrier Beach has taken place.

Appellants herein allege that, as a result of the improper design, construction, and maintenance of the fifteen groins presently in place and the failure of Suffolk County to complete the beach erosion and hurricane project in this area, Barrier Beach to the west of the fifteen groins, the area owned by appellants and other members of the putative class, has suffered catastrophic damage. It is asserted that, prior to the beginning of groin construction, erosion along the reach of Barrier Beach between Shinnecock and Moriches Inlets was about seven to nine feet per year. According to appellants, within eighteen months of completion of the first eleven groins, the area to their west eroded by approximately eighty feet, and, since completion of the second increment of four groins, further erosion has taken place to their immediate west, in contrast to the easterly side of the last groin, where the beach is three hundred or more feet deep.

Appellants further allege that, as a consequence of this erosion numerous houses have been swept into the ocean, including six or more in the last year alone, approximately fifty homes are on the verge of tumbling into the ocean, other property of putative class members has been rendered unusable and its value greatly depreciated, and there has been damage to the multimillion dollar investment in public beaches made by the Town of Southampton and Suffolk County. Moreover, appellants contend that there has been destruction of the delicate ecological balance of Moriches Bay.

Based on the above, appellants alleged in their complaint five grounds for relief: 1) that appellee negligently constructed the groins between 1960 and November, 1970 by not beginning construction at the downdrift end of the beach and by failing to complete the project; 2) that the improper design and maintenance of the incomplete project [by appellees] constitute a continuing nuisance that has caused, and will cause, irreparable harm to appellants for which there is no adequate remedy at law; 3) that appellee has taken appellants' land in violation of the Fifth and Fourteenth Amendments; 4) that there has been a taking by appellee under the New York Constitution; and 5) that Suffolk County has acted in violation of § 119 of its Charter by failing to protect the shoreline. Appellants seek an injunction prohibiting continuation of the nuisance, including, but not limited to, the construction of additional groins as are necessary to complete the downdrift segment of the reach, or, in the alternative, the removal of the fifteen previously constructed groins, and an injunc-

5. According to appellants, Suffolk County's plan resulted from economic and political concerns, namely, since the County was to be responsible for maintenance of the groins, it would have the burden of maintaining any sand fill which was added; and the County showed preference for the wealthier and more politically influential homeowners in the East end.

tion directing Suffolk County to repair the harmful effects of the nuisance upon the property of appellants and other members of the putative class. In addition, appellants seek damages in the amount of $70 million.

In support of its motion to dismiss appellants' complaint, Suffolk County alleges that the increased erosion is a result of natural forces. According to the County, two basic processes are responsible for this erosion—the natural offshore-onshore movement of sand caused by long, low waves, and the alongshore movement of sand, known as "littoral drift." Moreover, Suffolk County claims that it was the Army Corps of Engineers which, by law, was given the discretion and authority to implement the project, and it was the Corps which conducted the actual construction pursuant to a plan which it developed. Under the Congressional scheme, it asserts, the County's responsibilities were limited to obtaining the easements from local property owners upon which the groins were constructed (once the Corps had chosen the site), maintaining the project once complet-

ed, and providing the local share of the funds for construction. As to its duty to maintain the groins, Suffolk County alleges that its obligation will not mature until the federal project is completed. It contends that, since further studies regarding the desirability of building additional groins on or removing the groins from Barrier Beach are presently underway as a joint effort among several federal agencies, with a scheduled completion date of 1986–87, at present it has no duty to maintain the groins. The County therefore moved for dismissal, pursuant to Fed.R.Civ.P. 12(b) or, alternatively, for summary judgment, pursuant to Fed.R.Civ.P. 56.

Finally, Suffolk County claims that, since the complaint herein is similar to that in litigation already pending in the Eastern District, *O'Grady et al. v. United States et al.*, 73 Civ. 1182, the *Rapf* complaint should be dismissed. According to the County, because of the similarity between the instant action and *O'Grady*, if the property owners herein are entitled to judicial relief, they can obtain such relief in the *O'Grady* action.[6]

---

**6.** Prior to the suit herein, on August 7, 1973, in an attempt to remedy the damage caused by the groins, two plaintiffs named O'Grady and Patton did commence an action on behalf of themselves and purportedly on behalf of the class of individuals constituting the "Barrier Beach Association" against the federal, state, and county governments. *Id.* Plaintiffs in *O'Grady* asserted that they were entitled to relief under common law principles of negligence, contract, and nuisance, the Federal Tort Claims Act, the Fifth and Fourteenth Amendments to the United States Constitution, the National Environmental Protection Act, the Environmental Quality Improvement Act of 1970, the Administrative Procedure Act, the Environmental Conservation Law of the State of New York, Article I, Section 7, of the New York State Constitution, and the County Charter of Suffolk County.

After their motion for a preliminary injunction was denied in June, 1982, in the Fall of 1983, the *O'Grady* plaintiffs requested an immediate trial on their claim for a permanent injunction. At a hearing on Nov. 7, 1983, the district court denied this application. Subsequently, on March 13, 1984, the parties entered into a stipulation of facts in which they agreed that plaintiff O'Grady had died, and plaintiff Patton no longer owned property on Dune Road. They also stipulated that neither putative

class representative had ever filed a notice of claim with the County.

On May 23, 1984, the district court dismissed the *O'Grady* action for failure to timely substitute a proper party plaintiff under Fed.R.Civ.P. 25. A motion was made for reconsideration, and, on June 26, 1984, the district court reinstated the action and granted permission to substitute O'Grady's widow as the new plaintiff.

According to Suffolk County, the differences between the complaint herein and that in *O'Grady* are minimal. It asserts that, first, in the instant suit, plaintiffs omitted claims based on federal and state environmental statutes, the Federal Administrative Procedure Act, and on breach of contract. Second, appellants herein sued only Suffolk County, whereas the *O'Grady* plaintiffs included the United States and the State of New York as defendants. Third, the *O'Grady* plaintiffs failed to ever file a notice of claim as a condition precedent to commencement of their action, whereas the appellants herein filed a notice of claim in 1984. Fourth, whereas the *O'Grady* suit was brought on behalf of members of the Barrier Beach Association, the putative class herein does not consist only of members of the Association but is defined simply as those persons similarly situated to the two named plaintiffs.

The district court herein treated Suffolk County's motion as one for dismissal and concluded that, since Suffolk County had not done anything to the groin field since 1970, appellants' allegations were insufficient to state a claim for relief from a continuing tort. According to the district court, the erosion merely amounted to consequential damage flowing from the original construction of the groin fields. The court thus held that appellants' action was time-barred by virtue of their failure to file a notice of claim until 1984 and by their failure to commence the action within the time period set forth in New York Gen. Mun. Law § 50–i(1). In addition, the district court concluded that the equitable doctrine of laches barred appellants from bringing the action.

On appeal, appellants do not press their constitutional claims but assert that the district court erred in finding the complaint insufficient to state a cause of action in continuing tort and that, therefore, the statute of limitations has not run. Furthermore, appellants urge that the defense of laches in inapplicable.

### DISCUSSION

New York County Law § 52, which in turn incorporates the provisions of §§ 50–e and 50–i of the N.Y.Gen.Mun. Law, governs the instant action. It states:

Any claim or notice of claim against a County for damage, injury or death, or for invasion of personal or property rights, of every name and nature, and whether casual or continuing trespass or nuisance and any other claim for damages arising at law or in equity alleged to have been caused or sustained in whole or in part by or because of any misfeasance, omission of duty, negligence or wrongful act on the part of the county, its officers, agents, servants or employees, must be made and served in compliance with section fifty-e of the general municipal law. Every action upon such claim shall be commenced pursuant to the provisions of section fifty-i of the general municipal law. The place of trial shall be in the county against which the action is brought.

N.Y. County Law § 52(1) (McKinney 1972).

Section 50–i of the General Municipal Law specifies that such an action against a county "shall be commenced within one year and ninety days after the happening of the event upon which the claim is based." N.Y.Gen.Mun. Law § 50–i(1)(c) (McKinney 1977). Section 50–e requires, as a condition precedent to any action against a county, the filing of a notice of claim within ninety days after the claim arises. N.Y.Gen.Mun. Law § 50–e(1)(a) (McKinney 1977).

Appellee Suffolk County maintains that given the clear language of 50–i(1)(c) governing commencement of a suit against a municipality, i.e., that the time should be computed from the happening of the event, upon which the claim is based, and the different language governing commencement of a civil suit between private parties, i.e., that the time should be computed from "accrual of the cause of action," N.Y.Civ. Prac. Law § 203(a) (McKinney 1972), the point from which the statutory period should be measured in a suit against a municipality is not meant to be equivalent to the accrual of a cause of action. Thus, Suffolk County alleges that the statute of limitations herein should be measured from the date of the event upon which the claim is based. Since, according to Suffolk County, the claim herein is based upon construction of the groins, and since the County has not taken any action following authorization of funds for construction of the last groin in 1970, appellee asserts that the limitations period should be computed from 1970.

Suffolk County cites two main cases in support of its argument. In *Klein v. City of Yonkers*, 53 N.Y.2d 1011, 425 N.E.2d 865, 442 N.Y.S.2d 477 (1981), nine years after a certificate of occupancy was issued by the municipality, the plaintiff brought an action for fire damage to his building. Stating that the statutory time period is to be measured from "the happening of the event upon which the claim is based" rath-

er than from the time of accrual, even if, under the accrual rule, the action would be timely, the New York Court of Appeals held that the action was time-barred since the suit was commenced nine years from the issuance of the certificate of occupancy. The *Klein* court evidently construed issuance of the certificate of occupancy, rather than the fire, as the event upon which the claim was based.

In *Nebbia v. County of Monroe*, 92 A.D.2d 724, 461 N.Y.S.2d 127 (4th Dept. 1983), the plaintiff brought an action in 1982 for the presence of sewage on his property as of that date. Plaintiff alleged that the sewage resulted from the municipality's severance of a sewage line in 1979. As in *Klein*, the court in *Nebbia* held that the limitations period should be measured from "the happening of the event upon which the claim [was] based," identified therein as the date of severance, not from accrual of the cause of action, i.e., not from the date sewage went on to plaintiff's property. The *Nebbia* court thus held the action to be time-barred.

Although appellee is correct in contending that, based upon *Klein* and *Nebbia*, the limitations period in the instant action should be computed from the "happening of the event upon which the claim is based," we conclude that, even under *Klein* and *Nebbia*, appellants' action herein should not have been dismissed as untimely at this juncture. In the present suit, Suffolk County moved, pursuant to Fed.R. Civ.P. 12(b)(6), to dismiss appellants' action for failure to state a claim upon which relief can be granted. In such a case, as appellee concedes, if matters outside the pleadings are considered, the motion for dismissal should be treated as one for summary judgment. Fed.R.Civ.P. 12(b)(6) Advisory Comm. Note. Herein, affidavits are available, and in the absence of a disclaimer, we assume that they were considered. Thus, appellee's motion should have been treated as one for summary judgment, and the motion should not have been granted unless the district court found, after drawing all reasonable inferences in favor of the party opposing the motion, i.e., appellants,

*Adickes v. S.H. Kress and Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Poller v. CBS*, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962); 6 J. Moore, Federal Practice ¶ 56.15[3] (2d ed. 1966) that there are no material issues of fact in dispute. *United States v. Pent-R-Books, Inc.*, 538 F.2d 519, 529 (2d Cir. 1976), *cert. denied*, 430 U.S. 906, 97 S.Ct. 1175, 51 L.Ed.2d 582 (1977). We find that a material issue of fact is in dispute between appellants and Suffolk County, namely, the issue of who presently has the duty to maintain the groins. Consequently, we conclude that the district court erred in dismissing appellants' complaint.

■ According to appellee, the County is not the owner of the groins, and also, its duty to maintain the groins does not mature until the project is complete. Since a study of the area, and of the need for groins is still being undertaken, the County contends that, at present, it has no duty of maintenance, and therefore, given that the County has taken no action subsequent to 1970, construction of the last groin in 1970 constitutes the event upon which the claim is based and from which the limitations period should be measured. Appellants contend, on the other hand, that Suffolk County's duty to maintain the groin fields has already matured. Citing *Bloss v. The Village of Canastota*, 35 Misc.2d 829, 232 N.Y.S.2d 166 (Sup.Ct. Madison Co.1962), in which the court held that defendant municipality's continuous operation of a dump was the critical "event" from which the limitations period should be measured pursuant to Gen.Mun. Law § 50–i(1)(c), appellants assert that the critical event herein is Suffolk County's alleged failure to maintain the groins or to build additional groins. It is because of the existence of this material issue of fact that we believe appellee's motion to dismiss should not have been granted.

■ Moreover, even if appellee's motion were treated as one to dismiss for failure to state a claim for which relief can be granted and not as one for summary judg-

ment, the motion for dismissal should still have been denied. To dismiss a complaint for failure to state a claim upon which relief can be granted, a court must accept plaintiff's allegations at face value, *Heit v. Weitzen*, 402 F.2d 909, 913 (2d Cir.1968), *cert. denied*, 395 U.S. 903, 89 S.Ct. 1740, 23 L.Ed.2d 217 (1969), must construe the allegations in the complaint in plaintiff's favor, *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), and must dismiss the complaint only if "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). *See generally Wade v. Johnson Controls, Inc.*, 693 F.2d 19 (2d Cir.1982). Under this standard, since the complaint alleges that Suffolk County at present does have the duty to maintain the groin fields, and, since appellants' action would be timely if the limitations period were measured, as appellants contend, from the County's failure to satisfy a continuing duty, the district court improperly dismissed appellants' complaint.

Furthermore, even if the time from which the limitations period should be measured pursuant to Gen.Mun.Law § 50–i(1)(c), i.e., "the happening of the event upon which the claim is based," were to be considered equivalent to the accrual date of the cause of action, appellants' complaint would still not be time-barred. Since appellants' complaint states a claim in continuing nuisance for which the cause of action accrues anew each day, *Hackensack Water Co. v. Village of Nyack*, 289 F.Supp. 671, 681 (S.D.N.Y.1968), appellants' complaint is timely.

According to appellee Suffolk County, for a finding of a continuous tort, a defendant must have been actively committing a tort each day. Since the last "action" taken by Suffolk County occurred in 1970 with construction of the last groin, appellee contends that, even if authorizing construction of the groins constituted a wrongful act, the present erosion is merely a consequential damage of the original construction and not the result of a continuing tort.

Moreover, Suffolk County asserts that its duty to maintain the groins has not yet matured. Consequently, according to Suffolk County, appellants' action would be barred by the statute of limitations, even if the statute started to run from accrual of the cause of action.

Appellants contend, to the contrary, that a continuing nuisance can result not only from continuous active wrongdoing, but also from present inaction. Therefore, since the erosion is alleged to be a result of the County's present failure to maintain the groins or to complete construction, the County may be guilty of creating a continuing nuisance which accrues anew each day. Based on this interpretation, which we accept on the present state of the record, appellants' action is not barred by the statute of limitations.

Appellants cite several cases in support of their argument. In *State v. Schenectady Chemicals, Inc.*, 117 Misc.2d 960, 459 N.Y.S.2d 971 (Rensselaer Co.1983), *modified*, 103 A.D.2d 33, 479 N.Y.S.2d 1010 (3d Dept.1984), a dumpsite created by defendant contaminated plaintiff's property. Many years later, the plaintiff brought suit to have defendant pay for cleaning up the site. Although the defendant's last "active" wrongdoing with respect to the site (i.e., the dumping of chemicals) had taken place more than fifteen years prior to commencement of the suit, the *Schenectady* court held that the migration of toxic chemicals through ground water supplies due to natural forces constituted a continuing public nuisance.

Suffolk County attempts to distinguish *Schenectady* by stating that the case involved a public rather than a private nuisance. This distinction, however, is without merit in that the *Schenectady* court itself based its holding on a prior case involving a private nuisance. *Kearney v. Atlantic Cement Co.*, 33 A.D.2d 848, 306 N.Y.S. 45 (3d Dept.1969). Furthermore, the instant case is even stronger than *Schenectady* in that defendant therein no longer had control over the instrumentality

causing the damage, whereas in the present action, Suffolk County allegedly has control over the groins.

Similarly, in *Amax, Inc. v. Sohio Industrial Products Co.*, 121 Misc.2d 814, 469 N.Y.S.2d 282 (N.Y.Co.1983), approximately nine years after discovering radioactive contamination on land which he had purchased from defendant, the plaintiff commenced his suit. Even though defendant's last "active" wrongdoing occurred almost twenty years prior to commencement of the action, the *Amax* court held that defendant's dumping of radioactive waste constituted a continuing nuisance and was, therefore, not barred by an accrual statute of limitations.

Suffolk County attempts to distinguish *Amax* on two grounds. First, appellee argues that the *Amax* court's finding of a continuous tort was based upon its analogizing the radioactive contamination of plaintiff's property to damage from an encroaching structure, which historically has been regarded as a recurring trespass to land. The *Amax* court's reference to an encroaching structure, however, was provided merely as "an example" of a continuing tort, not as a necessary element. Second, Suffolk County places weight upon the distinction between a continuing trespass and a continuing nuisance. Whereas the *Amax* court held that defendant's conduct constituted a continuing trespass, appellants herein allege that Suffolk County has created a continuing nuisance. The distinction between trespass and nuisance, however, is irrelevant in the context of determining whether an action is continuing. As the court stated in *Kearney v. Atlantic Cement Co.*, 33 A.D.2d 848, 306 N.Y.S. 45 (3d Dept.1969), "[i]n instances of continuous trespass or nuisance, the wrong is continuous or recurring and a cause of action accrues for each injury, the wrong being not referable exclusively to the day when the original tort was committed." *Id.* at 849, 306 N.Y.S.2d at 46–47; *Gregory v. City of New York*, 346 F.Supp. 140 (S.D. N.Y.1972) (damage resulting from diversion of water by construction of dam is continuing tort). Furthermore, since appel-

lants herein, as in *Schenectady* and *Amax*, would be required either to bring more than one action to recover their full damages or to institute an action before the potential extent of the injury is known, this is a classic case of a continuing nuisance. *Hackensack Water Co. v. Village of Nyack*, 289 F.Supp. 671, 681–2 (S.D.N.Y. 1968). *See United States v. Dickinson*, 331 U.S. 745, 67 S.Ct. 1382, 91 L.Ed. 1789 (1947). Moreover, the defendant in *Amax*, as in *Schenectady*, no longer had control over the instrumentality causing the damage to plaintiffs—the contrary allegedly exists herein.

In support of its argument that appellants have failed to assert a cause of action for continuing nuisance, Suffolk County relies on two cases, also relied on by the district court. Both cases are inapposite.

In *Macrose Realty Corp. v. City of New York*, 49 A.D.2d 847, 373 N.Y.S.2d 611 (1st Dept.1975), plaintiffs sued the city in 1968 for damage to the foundations of several of their buildings, resulting from the negligent construction of a public school in 1939. The *Macrose* court held the action to be time-barred. In *Macrose*, however, plaintiffs' claims were based on wrongful acts committed and damages suffered years before litigation was commenced. At the time the *Macrose* suit was instituted, the city was no longer either engaging in active wrongdoing or failing to perform any obligation. Herein, on the other hand, as well as in *Schenectady* and *Amax*, appellants' claims are based on appellee's alleged wrongful acts occurring and damages suffered daily, failing to fulfill a current duty to maintain the groin fields and to complete construction of additional groins, thereby causing daily erosion.

In *Steinberg v. Rosenblum*, 205 Misc. 760, 130 N.Y.S.2d 129 (New York Co.1954), *aff'd*, 284 A.D. 871, 134 N.Y.S.2d 591 (1st Dept.1954), also relied on by Suffolk County, plaintiff's garage was damaged by a pile driving operation at a nearby housing project. Since plaintiff failed to initiate suit within three years of the pile-driving

operation, the court held the action to be time-barred. As in *Macrose,* however, at the time the *Steinberg* suit was commenced, defendant was not obligated to take any actions with regard to the project. "What the defendant did was to complete the performance of its work and leave nothing which it continued to do or to maintain." 205 Misc. at 764, 130 N.Y.S.2d at 133. Furthermore, as in *Macrose,* and contrary to the instant case, both the injury and the wrongful acts in *Steinberg* were suffered long before suit was commenced.

■ In sum, in the four cases primarily relied upon by Suffolk County, *Klein, Nebbia, Macrose,* and *Steinberg,* defendants' wrongful conduct consisted of alleged negligent isolated acts occurring prior to commencement of suit, e.g., issuance of a certificate of occupancy, severance of a sewage line, construction of a building, and pile driving. Herein, to the contrary, the event upon which appellants' claim is based is not the isolated act of authorizing the construction of groins prior to 1970. Rather, the tortious conduct in question is Suffolk County's alleged present failure to maintain the groins or to authorize funding for construction of additional groins. Since this failure occurs each day that appellee does not act, the County's alleged tortious inaction constitutes a continuous nuisance for which a cause of action accrues anew each day. Therefore, even if the time from which the limitations period should be measured pursuant to Gen.Mun. Law § 50-i(1)(c), i.e., "the happening of the event upon which the claim is based," were to be considered equivalent to the accrual date of the cause of action, appellants' complaint would still not be time-barred. Furthermore, given that appellants' complaint sufficiently states a cause of action for a continuing tort for which the cause of action accrues anew each day, by filing a

notice of claim even in 1984, appellants have satisfied the General Municipal Law's requirement for filing such a notice within ninety days of the time the claim arises. Gen.Mun. Law § 50-e. Based on the foregoing, we conclude that appellants' claims are not barred by the applicable statute of limitations.[7]

■ Appellee Suffolk County further alleges, and the district court held, that appellants' claims are barred by laches. An equitable action is barred by laches under New York law where the following exist: (1) proof of delay in asserting a claim despite the opportunity to do so; (2) lack of knowledge on the defendant's part that a claim would be asserted; and (3) prejudice to the defendant by the allowance of the claim. *In re Diaz-Albertini's Estate,* 141 N.Y.S.2d 149, 154 (N.Y. County, 1955). Moreover, "[i]n order to show that he has been prejudiced, a defendant must show reliance and change of position resulting from the delay." *Airco Alloys Div. v. Niagara Mohawk Power,* 76 A.D.2d 68, 82, 430 N.Y.S.2d 179, 187 (4th Dept.1980).

Herein, the prejudice alleged by Suffolk County arises from appellants' failure to bring an action in 1966, subsequent to the erection of the first eleven groins (and the observation of some damage) but prior to construction of the second series of four groins. According to the County, the damage it suffered was the cost of subsidizing the erection of the last four groins.

■ We believe that appellee's allegation of damage is insufficient to support a laches defense. After construction of the first set of groins, appellants had no reason to know whether Suffolk County intended to complete the groin field, which would have

---

7. A notice of claim need not be filed if an action is brought in equity to restrain a continuing tort even if the plaintiff also seeks money damages, provided the demand for monetary relief is subordinate and incidental to the claim for equitable relief. *Grant v. Town of Kirkland,* 10 A.D.2d 474, 200 N.Y.S.2d 594, 595 (4th Dept.1960); *Fontana v. Town of Hempstead,* 18 A.D.2d 1084, 239

N.Y.S.2d 512, 513 (2d Dept.1963). This appears to be the situation in the present case, where the thrust of the action is to obtain an injunction ordering Suffolk County to abate the nuisance. In any event, according to appellants, over 115 residents of Barrier Beach in the affected area have filed notices of claim under Section 50 of the General Municipal Law.

allegedly prevented the extensive erosion that later occurred. Moreover, Suffolk County was on notice from the Corps' report in 1960 that failure to complete the groins might lead to damage. H.Doc. No. 425 at 54, 55. Thus, Suffolk County's attempt to show any change in its position in reliance on appellants' actions is unpersuasive. Furthermore, even if the doctrine of laches were applicable, it would bar only appellants' claims for equitable relief, not their claims for monetary damages. We therefore conclude that appellants' claims are barred neither by the applicable statute of limitations nor by laches.

At oral argument, Suffolk County asserted that the instant suit should be dismissed not only because the *O'Grady* litigation would protect the rights of appellants herein, but also because the relief which appellants seek would be meaningless unless New York State and the United States were joined as parties.

■ With regard to the *O'Grady* action, plaintiffs therein have failed to file a notice of claim as required by Gen.Mun. Law § 50–e. Furthermore, appellants assert that the timeliness issue is more easily addressed in the instant suit because of the absence of additional causes of action and defendants. With regard to the need for New York State and the United States to be joined as parties, according to appellants, assuming Suffolk County owns and is bound to maintain the groins, an injunction which seeks to abate the nuisance will not necessarily require New York or the United States to "do an act or spend money." Therefore, appellants assert that they can obtain relief fully and completely from Suffolk County. *Picard v. Wall Street Discount Corp.*, 526 F.Supp. 1248 (S.D.N.Y.1981). We are not persuaded to the contrary with regard to either of these arguments.

For the above reasons, we reverse and remand for further proceedings consistent with this opinion.