**In re Rene GARCIA, Debtor.**

**Rene GARCIA, Plaintiff,**

**v.**

**Miriam VALDES, Defendant.**

**Bankruptcy No. 189–93160–260.
Adv. No. 190–1166.**

United States Bankruptcy Court,
E.D. New York.

May 17, 1994.

Rosenberg, Rosenberg & Weiner by Bruce Weiner, Brooklyn, NY, for plaintiff/debtor.

Curi & Arandia by Alexander Arandia, Flushing, NY, for defendant.

## DECISION ON MOTIONS FOR SUMMARY JUDGMENT

CONRAD B. DUBERSTEIN, Chief Judge.

### DECISION

In this adversary proceeding, the Plaintiff–Debtor, Rene Garcia (the "Debtor"), seeks to have this Court determine null and void, a second note and mortgage executed by him, and held by Miriam Valdes ("Valdes"), on property previously owned by the Debtor located at 90–10 Elmhurst Avenue, Jackson Heights, New York.

This matter comes before this Court on the Debtor's motion for summary judgment and Valdes' cross-motion for the same relief, pursuant to Federal Rule of Civil Procedure 56, made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7056. The Debtor's motion for summary judgment relates only to its claim that the Statute of Limitations imposed by the New York Civil Practice Law and Rules ("CPLR") section 213(4)[1] outlaws the second mortgage. Valdes' cross-motion seeks a declaration by this Court that her second mort-gage is valid and fully enforceable, notwithstanding the Debtor's defenses, besides the ones related to the statute of limitations, the defenses of usury, lack of consideration, and unauthorized execution by a co-mortgagor/obligor.

For the reasons hereinafter set forth, the Debtor's motion for summary judgment is denied. Valdes' cross-motion for summary judgment is granted in part, solely with respect to the issue of statute of limitations, and denied with respect to the remainder of the cross-motion.

### FACTS

The Debtor filed a petition for relief under Chapter 11 in this Court on October 2, 1989. Several years prior thereto, Astoria Federal Savings and Loan ("Astoria"), the holder of a first mortgage affecting the property, obtained a judgment of foreclosure under its mortgage. In the foreclosure action, Valdes, the undisputed holder of a second mortgage in the amount of $40,700, was named as a party-defendant in her capacity as second mortgagee. After obtaining its judgment, but prior to the sale, Astoria assigned the judgment to 90–10 Realty Corporation ("90–10"), an entity of which the Debtor was president. The very next day, 90–10 assigned the judgment to Valdes, who retained her ownership right in the mortgage up to the date of the sale. Thus, at the time of the sale, Valdes held the judgment of foreclosure under the first mortgage and was also the second mortgagee.

During the course of the hearings on the subject motions for summary judgment, it developed that the history of the second mortgage and note was fraught with many inconsistencies. It was learned that the mortgage and note were executed on February 2, 1981, by the Debtor and Sogar Realty Corporation ("Sogar"), of which the Debtor was principal, as joint mortgagors/obligors, in favor of Valdes, although the reason for their joint execution is in dispute. The Debt-

---

1. CPLR section 213(4) states in pertinent part: The following actions must be commenced within six years:

....

4. an action upon a bond or note, the payment of which is secured by a mortgage upon real property, or upon a bond or note and mortgage so secured, or upon a mortgage of real property, or any interest therein[.]

or claims that the second mortgage and note were executed and delivered to Valdes in response to her demand for repayment of what the Debtor characterizes as a usurious loan previously made to him by Valdes. According to the Debtor, that loan was made in January 1978, in favor of Valdes, in the amount of $25,000, payable in one year, with interest calculated at the rate of two percent per month, which he characterizes as usurious. It is undisputed that the Debtor never made any payments under the loan. The Debtor further alleges that in January of 1981, Valdes demanded payment of the principal and interest on the note, which amounted to $40,700 at that time; and in consideration for an extension of the time in which the loan had to be paid, the Debtor and Sogar executed the second note and mortgage in the usurious amount of $40,700.[2] The Debtor also claims that Valdes' attorney insisted that Sogar, a corporate entity, execute the mortgage and note as to preclude a defense of usury to Valdes' second mortgage.[3]

The Debtor also alleges that after execution of the second mortgage and note, they were transferred to the 7–11 Investment Corporation ("7–11"), which, by an unsigned letter dated November 10, 1982, accelerated its unpaid balance, and subsequently transferred it back to Valdes.

Valdes denies the existence of any previous loan. She also denies ever assigning her second mortgage. She supports her denial by pointing to a New York State Supreme Court decision, in an action she instituted there, which stated that: "this bare allegation [that the Second Mortgage was transferred to 7–11] is not supported by any documentary evidence...."

Notwithstanding the above confusing and contradictory contentions of both parties, they agree to the existence of the second mortgage and note which require that the principal sum of $40,700 be repaid in monthly installments of $905.36 commencing on May 15, 1981, and continuing until April 14, 1984, when the entire balance, including interest calculated at the rate of 12% per annum would become due. Although these terms of the second mortgage are clear and undisputed, the Debtor never made any payments. In fact, inasmuch as the Debtor was in default under both the first and second mortgage, Valdes proceeded to exercise her rights pursuant to her first mortgage foreclosure judgment, which ordered the sale of the property.

During the course of the hearings before this Court, it was learned that the Debtor brought many state court actions which apparently were intended to and succeeded in delaying the sale of the property. His penultimate tactic was the filing of the instant Chapter 11 petition, on October 2, 1989, the eve of the scheduled foreclosure sale. Ultimately, the Debtor commenced this adversary proceeding, in which, *inter alia*, as has been noted, he seeks a determination by this Court that Valdes' second mortgage is null and void because more than six years elapsed since the entire mortgage became due, but inasmuch as no payments were made, and no action was commenced with respect to it, the statute of limitations precludes its enforcement. The Debtor thereupon moved for summary judgment on his statute of limitations claim. At a hearing held thereafter, this Court reserved its decision on the motion.

Prior thereto, by order of this Court dated October 6, 1992, and upon consent of all parties, the property was sold at public auction, conducted in this Court, for $330,000, free and clear of all liens, with the same to attach to the proceeds of the sale. Pursuant to the terms of said order of October 6, 1992, $200,000 of the proceeds of the sale was held in escrow ("Escrow Proceeds") by the attorney for the Debtor, on account of the two mortgages, pending the outcome of the instant adversary proceeding.

---

**2.** The Debtor alleges that the second mortgage and note, which called for interest in excess of the legal rate of interest allowed by New York General Obligations Law section 5–501, were executed to "mask and disguise" the previous loan.

**3.** New York General Obligations Law Section 5–521(1) provides, *inter alia*, that a corporation shall not interpose the defense of usury in any action.

On December 28, 1992, Valdes' attorney moved this Court for an order directing the release to him, for Valdes, $126,582 as the amount due under the first mortgage. The Debtor disputed the amount. At the hearing on the motion, this Court directed the release to Valdes' attorney, $58,005, the undisputed amount of the first mortgage, to be held in escrow by him, pending a final determination by this Court of the amount due under the first mortgage. At a subsequent hearing and pursuant to this Court's order dated August 4, 1993, Valdes' attorney was authorized to release to her, the entire $58,005.

Several weeks before the entry of the aforesaid order, Valdes filed her cross-motion for summary judgment, seeking a declaration that her second mortgage is valid and fully enforceable, and directing the Debtor to satisfy that mortgage with appropriate funds from the remaining Escrow Proceeds.

In an attempt to finally resolve the disputed amount due under the first mortgage, Valdes retained Vincent Mazzola, a certified public accountant who, applying generally accepted accounting principles, calculated the total amount due under the first mortgage, less postpetition payments made by the Debtor, to be $79,387. As a result, Valdes moved this Court for an order directing Debtor's attorney to release to Valdes an additional $21,382, representing the difference between the $79,387 and the $58,005 previously released, in full satisfaction of the first mortgage. In an effort to promote judicial economy, the hearing on that motion was adjourned until it was heard simultaneously with her previous cross-motion for summary judgment which sought to have her second mortgage declared valid and enforceable and have it satisfied out of the remainder of the Escrow Proceeds.

At that hearing, this Court reserved its decision with respect to Valdes' motion and cross-motion. After a considerable delay by both parties, this Court received both parties' memoranda of law in support of their motions. During this Court's deliberations in the process of rendering a decision, it learned that the parties had settled the first mortgage claim for the amount of $58,005, which was the very same amount previously awarded to Valdes by this Court, and was informed that her motion to fix the amount due under the first mortgage was withdrawn.

By reason of the foregoing, it appears that the Escrow Proceeds held by the Debtor's attorney amounts to $142,095, together with any interest accrued, and will be distributed in accordance with this Court's ultimate decision in the instant adversary proceeding. However, this Court must first entertain the Debtor's motion and Valdes' cross-motion for summary judgment regarding the enforceability of the second mortgage. According to Valdes, the amount presently due, with interest, is $181,052.

### DISCUSSION

A motion for summary judgment is governed by Fed.R.Civ.P. 56, made applicable to bankruptcy proceedings pursuant to Fed.R. of Bankr.P. 7056. In ruling on a motion for summary judgment, the Court's function is to determine whether a genuine issue as to any material fact exists, not to resolve any factual issues. *Celotex Corp. v. Catrett,* 477 U.S. 317, 330, 106 S.Ct. 2548, 2556, 91 L.Ed.2d 265 (1986); *Eastman Machine Co. v. United States,* 841 F.2d 469 (2d Cir.1988); *In re Sapru,* 127 B.R. 306, 319 (Bankr.E.D.N.Y. 1991).

The court must deny summary judgment where there is a genuine issue as to any material fact, and grant summary judgment where there is no such issue and the movant is entitled to judgment as a matter of substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–52, 106 S.Ct. 2505, 2509–2512, 91 L.Ed.2d 202 (1986); *Hamilton v. Smith,* 773 F.2d 461, 466 (2d Cir.1985); *In re Kenston Mgt.,* 137 B.R. 100, 108 (Bankr. E.D.N.Y.1992).

The movant for summary judgment bears the burden of proving the absence of any genuine issue as to all material facts which entitle him to summary judgment. *Sapru,* 127 B.R. at 319; *In re F & L Plumbing & Heating Co.,* 114 B.R. 370, 374 (Bankr. E.D.N.Y.1990). Once this initial burden is met, the opposing party must not only set forth specific facts showing that there is a genuine issue for trial, but also that the

disputed fact is material. *In re General Am. Communications Corp.*, 130 B.R. 136, 152 (Bankr.S.D.N.Y.1991); *F & L Plumbing*, 114 B.R. at 374. In addition, when determining whether there is a genuine issue of material fact, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), *cert. denied*, 481 U.S. 1029, 107 S.Ct. 1955, 95 L.Ed.2d 527 (1987).

### The Debtor's Motion for Summary Judgment

#### Statute of Limitations

■ As already noted, the Debtor moved this Court for summary judgment seeking an order declaring Valdes' second mortgage null and void because it is outlawed by the applicable six year statute of limitations set forth in CPLR Section 213(4). Section 213(4) provides, *inter alia*, that an action on a note secured by a mortgage must be commenced within six years. *See supra* note 1.

The Debtor claims that on November 10, 1982, the second mortgage was accelerated by 7–11, its alleged holder at that time, and primarily argues that because more than six years have elapsed since the entire mortgage became due and payable as a result of its acceleration, and no payments have been made thereon, the mortgage is null and void. However, as noted above, the issue of acceleration remains disputed as Valdes denies that the mortgage was ever assigned or accelerated. The Debtor therefore alternatively argues that if this Court *finds* that the mortgage was not accelerated, the statute of limitations outlaws only payments of interest and amortization which became due between May 15, 1981 and October 15, 1983.[4] Thus, even if the Debtor's primary or alternative argument was correct, the issue of acceleration still remains a disputed genuine material issue of fact because

> [a]lthough there is no established standard governing the question of what

constitutes a material fact.... a fact is material if it resolves any of the issues properly raised by the parties.... or if its existence might affect the result of the action.

10A Charles A. Wright et al., Federal Practice and Procedure: Civil 2d § 2725, at 93–94 (1983).

Clearly, in the context of the Debtor's argument, the issue of acceleration will affect the outcome of this litigation. The Debtor-movant himself has therefore pointed to a disputed material issue of fact, and hence, under the Debtor's own legal analysis, the Court would be inclined, if not compelled, to deny summary judgment for that reason. Nevertheless, for the following reasons, the Debtor's legal analysis is flawed, and this Court must deny his motion for summary judgment as a matter of law.

■ The Debtor, in his argument, fails to consider the implications of Astoria's naming of Valdes as a party-defendant in her capacity as second mortgagee in its action to obtain its judgment of foreclosure of its first mortgage. Once joined as a necessary party-defendant, "requiring [Valdes] to commence a separate action [to foreclose its Second Mortgage] would not advance any of the interests that statutes of limitation serve to protect." *Dime Savs. Bank v. Boklan*, No. CV 86–2664, 1989 WL 35946, at *4 (E.D.N.Y. Apr. 3, 1989). The statute's function is simply to "protect a defendant from stale suits." N.Y.Civ.Prac.L. & R. § 201 commentary C201:6 at 63 (McKinney 1990). *See Guaranty Trust Co. of New York v. United States*, 304 U.S. 126, 136, 58 S.Ct. 785, 790, 82 L.Ed. 1224 (1938) (statute of limitations designed to guard against from "stale and vexatious claims").

In *Dime*, a subordinate judgment creditor challenged a junior mortgagee's claim to surplus funds arising from foreclosure and sale by a senior mortgagee because the junior mortgagee did not commence an action to foreclose its mortgage within six years of the declaration of default. As in the case at bar, the junior mortgagee had been joined as a

---

4. Thus, the Debtor contends that 30 payments of $905.36, totalling $27,160.80, must be deducted from $40,700, the original mortgage amount, leaving a balance due of $13,539.20.

necessary party defendant in the senior mortgagees's foreclosure action within six years of the declaration of default of the junior mortgagee's mortgage. Relying on CPLR Section 213(4), the judgment creditor argued that notwithstanding the fact that the junior mortgagee was joined as a necessary party defendant in the senior mortgagee's foreclosure action, the junior mortgagee was obligated to commence its own foreclosure action within six years of the declaration of default. The District Court disagreed and held that: "under New York law, the lien of a junior mortgagee who is made a party to a foreclosure action brought by a senior mortgagee, although cut off and extinguished as to the land, continues as a lien upon the surplus funds arising from the foreclosure." *Dime Savs. Bank of New York v. Boklan,* 1989 WL 35946, at *3. *See In re Ellis' Estate,* 110 Misc. 192, 179 N.Y.S. 873, 874 (N.Y.Sup.Ct.1920) (surplus proceeds of foreclosure sale remain real property upon which second mortgagee has first lien).

The District Court in *Dime* found CPLR Section 213(4) to be inapplicable to a junior mortgagee under circumstances sufficiently similar to the case at bar. In fact, Judge Dearie held that "[h]ere, there can be no doubt that the participation of [the junior mortgagee] in the foreclosure action put everyone with an interest in potential surplus on notice that [the junior mortgagee], too, had a potential interest in the surplus, thus the commencement of a separate action would have served no additional purpose." *Dime,* at *4. This Court finds that under the facts of the instant matter, Valdes was not required commence a separate action to foreclose her Mortgage because she was joined as a party-defendant in the senior mortgagee's action. Her potential interest vests in the surplus funds generated by the Sale. The Debtor's motion for summary judgment is therefore denied.

### Valdes' Cross–Motion for Summary Judgment Motion

#### Statute of Limitations

Applying the same legal reasoning that this court afforded Debtor's motion for summary judgment, and in light of the fact that the existence of the second mortgage is undisputed, Valdes' cross-motion for summary judgment is granted in part, solely with respect to her claim that the statute of limitations set forth in CPLR 213(4) does not preclude enforcement of her second mortgage.[5]

#### Usury and the Related Remaining Defenses to Valdes' Cross Motion

■ The Debtor alleges in its complaint that Valdes' second mortgage is usurious. Nevertheless, citing no case law, Valdes argues that CPLR section 215(6) is clearly applicable to the Debtor's claim that the second mortgage is usurious. Section 215(6) provides that an "action to recover any overcharge of interest or to enforce a penalty for such overcharge" must be commenced within one year. Because the instant adversary proceeding was commenced more than one year from the execution of the Second Mortgage, Valdes argues that the usury claim is time-barred and thus, the Debtor fails to state a cause of action and Valdes is entitled to summary judgment as a matter of law. This Court disagrees.

Valdes has provided this Court with an incorrect legal argument. "The words and meaning of this statute [CPLR 215(6)] are plain, clear and unambiguous...." *Rubin v. City Nat'l Bank and Trust Co. of Gloversville,* 131 A.D.2d 150, 152, 520 N.Y.S.2d 640, 641 (3d Dep't 1987). Clearly, the statute indicates that actions to *recover payment or*

---

5. In support of her cross-motion for summary judgment, Valdes argues that she was prohibited from commencing an action on her second mortgage by New York Real Property Actions and Proceedings Law ("RPAPL") section 1301(1). The Court notes, however, that the purpose of section 1301(1) is to avoid multiple litigation to recover the same debt. *See Stein v. Nellen Development Corp.,* 123 Misc.2d 268, 270, 473 N.Y.S.2d 331, 333 (Sup.Ct.Suffolk County 1984); *Manufacturers Hanover Trust Co. v. 400 Garden City Assocs.,* 150 Misc.2d 247, 249, 568 N.Y.S.2d 505, 507 (Sup.Ct.Nassau County 1991) (citations omitted). Thus, under the facts of this case, this Court rejects Valdes' argument. Valdes' faulty legal analysis fails to consider that the first and second mortgages in the instant case are *different* debts.

*enforce a penalty for that overcharge* must be commenced within a year. In fact, Section 215(6) contemplates that actual payment was made inasmuch as case law has held that the statute of limitations begins to run from time payment was made. *See, e.g., Durante Bros. and Sons, Inc. v. Flushing Nat'l Bank,* 571 F.Supp. 489, 492 (E.D.N.Y.1983) (usury action under 215(6) brought over two years after last payment time barred), *aff'd in part vacated in part* 755 F.2d 239 (2d Cir.1985), *cert. denied,* 473 U.S. 906, 105 S.Ct. 3530, 87 L.Ed.2d 654 (1985); *Shute v. Stattman,* 254 A.D. 783, 783, 4 N.Y.S.2d 746, 747 (2d Dep't 1938) (usury action must be commenced one year after *payment* ). It is undisputed that the Debtor never made *any* payments under the second mortgage, and therefore the statute of limitations set forth in Section 215(6) has not yet run. This Court also emphasizes that the Debtor's action is not one to recover usurious payments it made, rather it seeks a declaration by this Court that the second mortgage is null and void under that very same section. Thus, because no usurious payments have been made to date by the Debtor, Valdes' argument that the statute of limitations set forth in CPLR 215(6) bars the Debtor's claim is hereby rejected.

This court recognizes, however, that "usury claim must be proved by clear evidence as to all its elements and will not be presumed." *Hammelburger v. Foursome Inn Corp.,* 54 N.Y.2d 580, 594, 431 N.E.2d 278, 286, 446 N.Y.S.2d 917, 925 (1981). Although *Hammelburger* involved usury in the criminal context, the same need for clear evidence is required in a civil action such as this. In civil matters, there is a strong presumption against the finding of usurious intent. *Lehman v. Roseanne Investors Corp.,* 106 A.D.2d 617, 618, 483 N.Y.S.2d 106, 108 (2d Dep't 1984). Although the terms and conditions of the second mortgage and note are undisputed, and not usurious on their face, the circumstances surrounding and reasons for their execution are questionable at best. Before ruling on usury, this Court is compelled to thoroughly examine the underlying transaction.

Under New York Law, "... a court will go beyond the form of a transaction and examine its substance if it appears that the form is a subterfuge for what would otherwise be a usurious loan." *In re General Am. Communications Corp.,* 63 B.R. 534, 543 (Bankr.S.D.N.Y.1986), *rev'd on other grounds,* 73 B.R. 887 (S.D.N.Y.1987). "Form amounts to nothing, if the facts show the transaction was usurious ... courts always look to the nature of the transaction and not to the form in determining whether such transaction was usurious." *Graham v. Weiss,* 3 Misc.2d 28, 30, 149 N.Y.S.2d 676, 678 (Sup.Ct.Queens County 1956); *See Vee Bee Serv. Co. v. Household Finance Corp.,* 51 N.Y.S.2d 590, 597 (Sup.Ct.Queens County 1944), *aff'd,* 269 A.D. 772, 55 N.Y.S.2d 570 (1st Dep't 1945). In addition, Sogar's role as a corporate co-mortgagor and co-obligor of the second mortgage and note deserve further scrutiny by this Court in light of Debtor's allegations that Valdes insisted on Sogar's participation in order to preclude a defense of usury. *See supra* note 3. This Court will not simply presume a loan to be free from usury because it is made in part to a corporate entity.

Before this Court can apply the law, it must have an adequate factual basis for doing so. In some situations, a fuller development of the facts may serve to clarify the law or help the court determine its application to the case. 10A Charles A. Wright et al., Federal Practice and Procedure: Civil 2d § 2725, at 85 (1983). Therefore, the remainder of Valdes' cross-motion for summary judgment is therefore denied, inasmuch as the resolution of this issue requires a more concrete factual development that may not be obtained through summary proceedings.

### CONCLUSION

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a), and it is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).

2. The Debtor's motion for summary judgment is denied.

3. Valdes' cross-motion for summary judgment is granted in part, solely to the extent that the enforcement of the terms of her second mortgage is not barred by the

statute of limitations provided in CPLR Section 213(4). The remainder of Valdes's cross-motion for summary judgment is denied.

4. The parties are directed to proceed with the trial of the remaining issues raised in this adversary proceeding by obtaining a trial date from this Court within 20 days.