**SCHLESINGER INVESTMENT PARTNERSHIP,**
**Plaintiff-Appellant,**

v.

**FLUOR CORPORATION and Fluor Acquisition Corporation,**
**Defendants-Appellees.**

**No. 283, Docket 81-7482.**

United States Court of Appeals,
Second Circuit.

Argued Jan. 22, 1982.
Decided March 2, 1982.

Stuart D. Wechsler, New York City (Kass, Goodkind, Wechsler & Labaton, Edward Labaton, Robert I. Harwood, New York City, of counsel), for plaintiff-appellant.

Edmund H. Kerr, New York City (Cleary, Gottlieb, Steen & Hamilton, Jonathan I. Blackman, New York City, of counsel), for defendants-appellees.

Cohen & Shapera, Chicago, Ill., amicus curiae for Trustees Herbert D. Mendel and Edwin J. Mendel.

Before FEINBERG, Chief Judge, and LUMBARD and MANSFIELD, Circuit Judges.

FEINBERG, Chief Judge:

Schlesinger Investment Partnership (Schlesinger) appeals from a judgment of the United States District Court for the Southern District of New York, Mary J. Lowe, J., dismissing its complaint under §§ 14(d) and (e) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n (the Williams Act),[1] for failure to state a claim upon which relief can be granted. The judgment was entered on May 29, 1981 after a status conference at which the court sua sponte and without notice to the parties ruled that "as a matter of law . . . the complaint does not state or the facts supporting this com-

1. The Williams Act provides in relevant part that:

(d)(6) Where any person makes a tender offer, or request or invitation for tenders, for less than all the outstanding equity securities of a class, and where a greater number of securities is deposited pursuant thereto within ten days after copies of the offer or request or invitation are first published or sent or given to security holders than such person is bound or willing to take up and pay for, the securities taken up shall be taken up as nearly as may be pro rata, disregarding fractions, according to the number of securities deposited by each depositor.

* * * * * *

(e) It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, or to engage in any fraudulent, deceptive, or manipulative acts or practices, in connection with any tender offer or request or invitation for tenders, or any solicitation of security holders in opposition to or in favor of any such offer, request, or invitation.

plaint do not state a violation of Section 14." Appellant was denied leave to replead and an opportunity to conduct discovery. We believe that the liberal policy underlying the Federal Rules of Civil Procedure requires the federal courts to accord litigants greater opportunity to flesh out their allegations. Accordingly, we reverse and remand the case for further proceedings.

## I.

This complaint was brought as a class action for all similarly situated shareholders of St. Joe Minerals Corporation (St. Joe).[2] The action arises out of a tender offer for 45% of the common stock of St. Joe by Fluor Acquisition Corporation, a wholly-owned subsidiary of Fluor Corporation, referred to collectively hereafter as "Fluor." Fluor apparently came in as a white knight to prevent the takeover of St. Joe by JES Developments, Inc., a wholly-owned subsidiary of Joseph E. Seagram & Sons, Inc., referred to collectively hereafter as "Seagram." On March 11, 1981, Seagram had announced its intention to offer to buy all the shares of St. Joe; Fluor announced its counter-proposal 20 days later, on March 31, 1981, and on April 5, 1981, the directors of Fluor and St. Joe authorized a merger and executed a merger agreement. Fluor made its tender offer on April 6, 1981 and Seagram subsequently withdrew its offer.

Fluor's Offer to Purchase carried on its front page the purchase price it was offering, $60.00 per share, the number of shares it sought to buy, 20,410,000, and in a special blocked off portion of the page, the legend "The Offer Will Expire at 12:00 Midnight, New York City Time, on Friday, May 1, 1981, Unless Extended." The remainder of the page contained the information that St. Joe's board of directors had approved the offer and gave some of the details for tendering shares. The second page consisted of a table of contents and the admonition that the material did not constitute an offer to sell Fluor common stock. The third page identified the parties and described the events that led St. Joe's directors to approve this offer. The fourth page described the details of the offer. In the upper portion of the page, the following statement appeared:

If more than 20,410,000 Shares are properly tendered by 12:00 midnight, New York City time, on Wednesday, April 15, 1981, and are not withdrawn, the Purchaser, on the terms and subject to the conditions in the Offer, will purchase 20,410,000 Shares on a pro rata basis (with adjustments to avoid purchases of fractional Shares) according to the number of Shares tendered by each stockholder. If fewer than 20,410,000 Shares are properly tendered by such time and not withdrawn, the Purchaser, on the terms and subject to the conditions in the Offer, will purchase all Shares so tendered and any Shares properly tendered thereafter and prior to the Expiration Date in the order tendered until 20,410,000 Shares have been purchased.

This paragraph agrees precisely with § 14(d)(6) of the Williams Act, which requires persons who offer to buy fewer than all the outstanding shares of a corporation to take up on a pro rata basis those shares tendered within 10 days after the offer is made if, at that point, more than the desired number of shares have been tendered. Since this offer was made on April 6, the appropriate cut-off date was April 15. Twenty-two pages of material followed the page on which this paragraph was printed.

By April 15, more than 20,410,000 shares had been offered for purchase by Fluor. Pursuant to the proviso quoted above, these were taken up on a pro rata basis. Fluor refused to accept shares tendered after April 15 but before May 1, the ostensible expiration date. Under the merger agreement reached April 5, all St. Joe shareholders were then required to exchange each share in St. Joe for 1.2 shares in Fluor. We are informed that at that time, 1.2 shares of Fluor were worth approximately $50.00. Therefore, St. Joe shareholders who did not tender by April 15 lost about $10.00 for each share not sold.

**2.** We have also received a brief from Herbert D. Mendel and Edwin J. Mendel as Trustees for various beneficiaries holding shares in St. Joe as amicus curiae in support of appellant's position.

In the district court, appellant Schlesinger claimed that it was misled by the caption on the front page into thinking that it could wait until close to May 1 to decide whether the difference between the market price of St. Joe and the offered price made it advantageous to tender its shares to Fluor. On appeal, Schlesinger also points out that the language on the fourth page is misleading in that it does not make clear that only shares tendered before April 15 would be subject to proration. Judge Lowe, however, ruled that a reasonable, prudent investor would have read all the material and would then have understood the paragraph on the fourth page as unambiguously stating Fluor's intention to prorate only those shares tendered by April 15. Finding nothing to mislead the reasonable, prudent investor, Judge Lowe dismissed the case with prejudice.

## II.

We are troubled by the procedural aspects of this dismissal. The Federal Rules of Civil Procedure place a heavy emphasis on notice. For instance, Rule 7(b) requires that applications to the court be made by motion in writing; Rule 6(d) requires that, in general, these be served not later than 5 days before the hearing; Rule 56(c) requires service of a motion for summary judgment 10 days before the day of the hearing. While it is true that these rules speak to actions proposed by the litigants rather than by the court, Rule 1 requires that the rules "be construed to secure the just ... determination of every action." It seems to us that the notice requirement is meant not as a restriction on the moving party, but rather as a device for securing an opportunity for the non-moving party to muster his best argument, to plan his strategy, and to put his best foot forward. In short, adequate notice helps the court secure a just determination. We have stated that "[f]ailure to afford plaintiffs an opportunity to address the court's *sua sponte* motion to dismiss is, by itself, grounds for reversal." *Lewis v. New York*, 547 F.2d 4, 6 n.4 (2d Cir. 1976). The chance to respond is an empty opportunity if the party is not given adequate time to prepare his response.

In this case, appellant maintains that had it received prior notice that the court was considering a dismissal, it would have sent a more experienced lawyer to the hearing and it would have been prepared to offer evidence that others—shareholders and an investment analyst [3]—were also misled by the Offer to Purchase. Furthermore, appellant might have been better able to articulate the argument that the proration statement on the fourth page was ambiguous.

Appellant's problem was exacerbated by the denial of its discovery rights. The federal rules evince a liberal policy with regard to discovery in order to allow litigants to secure helpful evidence from the hands of their adversaries. See, e.g., Rule 56(f), which allows the court to order a continuance on a summary judgment motion to allow discovery; Rule 15(b), allowing the parties to conform the pleadings to the evidence that was actually discovered and adduced at trial. If appellant had been allowed discovery here, it could have forced appellees to reveal how many stockholders had tendered late and, most importantly, whether "insiders" constituted the majority of those shareholders who tendered on time. Proof that significant numbers of St. Joe shareholders misunderstood the Offer would have made Schlesinger's case appear more weighty. Furthermore, the court might have benefited from the opportunity to compare this tender offer with others that were drafted differently. Because

---

**3.** At oral argument, appellant presented us with a copy of Vol. II, No. 2 Bear Stearns Litigation Review (July 1, 1981). At p. 14, the following statement appears:

In our opinion, the Offer to Purchase really was misleading, even though it is fairly customary for termination dates, withdrawal dates and proration dates to be disclosed in the manner used by Fluor. It is not the only way, however, because there are plenty of examples in which the withdrawal date and proration date are disclosed on the cover page along with the termination date.

Although this review was printed after this case was dismissed, it indicates that it is not unlikely that Schlesinger could have found an expert witness to support its claims.

facts such as these are rarely available at the outset of litigation, "summary judgment should rarely be granted ... when the plaintiff has not had an opportunity to resort to discovery procedures." *Schoenbaum v. Firstbrook*, 405 F.2d 215, 218 (2d Cir. 1968) (in banc), cert. denied sub nom. *Manley v. Schoenbaum*, 395 U.S. 906, 89 S.Ct. 1747, 23 L.Ed.2d 219 (1969). See also *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir. 1980).

Finally, appellant should have been given leave to replead. Rule 15(a) instructs the courts that "leave [to replead] shall be freely given when justice so requires." In this case, Schlesinger would have been able to assert its claim that the proration statement on the fourth page of the Offer was ambiguous. It may have developed other arguments of which we are not aware.[4]

### III.

We are also not convinced that appellant failed to state a cause of action in its original complaint. The Williams Act was meant to protect the ordinary investor, see, e.g., *Piper v. Chris-Craft Industries*, 430 U.S. 1, 22–23, 97 S.Ct. 926, 939–40, 51 L.Ed.2d 124 (1976). In *Gerstle v. Gamble-Skogmo, Inc.*, 478 F.2d 1281 (2d Cir. 1973), we were asked to determine whether a proxy statement was sufficiently misleading that it gave rise to a cause of action under § 14(a) of the Securities Exchange Act of 1934, which, like the Williams Act, is designed to protect the investors of a company that is the target of a takeover. In finding that the proxy statement was misleading, we said that "[w]hile 'corporations are not required to address their stockholders as if they were children in kindergarten,' it is not sufficient that overtones might have been picked up by the sensitive antennae of investment analysts." (Citation omitted). Id. at 1297. See also *Cole v. Schenley Industries, Inc.*, 563 F.2d 35, 40 (2d Cir. 1977). We therefore cannot reject out of hand the possibility that a shareholder might read the statement on the first page

and the statement on the fourth page and reconcile the two by concluding that if more than 20,410,000 shares were tendered by April 15, then the decision would be made to purchase all the shares tendered by May 1 on a pro rata basis. Moreover, the amici tell us that people who have large stock holdings receive many tender offers. Such investors are likely to file unread the items with deadlines marked on their front page for consideration closer to the cut-off date. Whether these are the acts of reasonably prudent investors are issues of fact that must be tried. Cf. *Carter v. Barry*, 468 F.2d 821, 822 (2d Cir. 1972).

For the foregoing reasons, we reverse the judgment of the district court and remand the case for further proceedings.

---

4. For instance, the amici tell us that they did not receive their copy of the offer until April 12th or 13th. The failure to get copies to all the shareholders until two days before the ef-

fective expiration date might be the basis for a complaint under the statute or the regulations adopted thereunder.