693 F.2d 19
 Walter G. WADE, Plaintiff-Appellant,
v.
JOHNSON CONTROLS, INC., formerly known as Globe Union, Inc.,
and Certain Unknown Defendants, hereby designated
"Defendants John Doe", persons responsible for maintenance
and for operation of air exchange and purification systems
of the North Bennington, Vermont factory during the years
1966 to 1979, addresses not presently known, Defendants-Appellees.
Gene A. STEVENS, Kathleen Stevens and their child, Tracy J.
Stevens, Plaintiffs-Appellants,
v.
JOHNSON CONTROLS, INC., formerly known as Globe Union, Inc.,
and Certain Unknown Defendants, hereby designated
"Defendants John Doe", persons responsible for maintenance
and for operation of air exchange and purification systems
of the North Bennington, Vermont factory during the years
1966 to 1979, addresses not presently known, Defendants-Appellees.
John BENTLEY, Dorothy A. Bentley, and their children,
Gregory F. Bentley, Laurie A. Bentley, Cheryl L.
Bentley, and Elizabeth H. Bentley,
Plaintiffs-Appellants,
v.
JOHNSON CONTROLS, INC., formerly known as Globe Union, Inc.,
and Certain Unknown Defendants, hereby designated "Defendant
John Does", persons responsible for maintenance and for
operation of air exchange and purification systems of the
North Bennington, Vermont factory during the years 1966 to
1979, addresses not presently known, Defendants-Appellees.
Dennis and Victoria MATHIEU and their children, Jennifer M.
Mathieu, Dennis M. Mathieu, Jr. and Joshua R.
Mathieu, collectively referred to herein
as the Mathieu Children,
Plaintiffs-Appellants.
v.
JOHNSON CONTROLS, INC., formerly known as Globe Union, Inc.,
and Certain Unknown Defendants, hereby designated
"Defendants John Doe", persons responsible for maintenance
and for operation of air exchange and purification systems
of the North Bennington, Vermont factory during the years
1966 to 1979, addresses not presently known, Defendants-Appellees.
 Nos. 159 to 162, Dockets 82 7267, 82 7269, 82 7277 and 82 7279
 United States Court of Appeals,
Second Circuit.
 Argued Sept. 22, 1982.
Decided Nov. 15, 1982.
 
 Jerome F. O'Neill, Burlington, Vt. (Robert E. Manchester, Lisman & Lisman, Burlington, Vt., of counsel), for plaintiffs-appellants.
 Philip H. Hoff, Burlington, Vt. (Michael T. Schein, Hoff, Wilson, Powell & Lang, Burlington, Vt., Stanley S. Jaspan, Foley & Lardner, Milwaukee, Wis., of counsel), for defendants-appellees.
 Before LUMBARD, MESKILL and CARDAMONE, Circuit Judges.
 MESKILL, Circuit Judge:
 
 
 1
 This is an appeal from a judgment of the United States District Court for the District of Vermont, Coffrin, J., granting appellee's Fed.R.Civ.P. 12(b)(6) motion to dismiss appellants' consolidated complaint for failure to state a cause of action upon which relief can be granted. We believe that the claim states such a cause of action. Therefore, we reverse and remand for further proceedings.
 
 
 2
 Taking the appellants' allegations as true, as we must for the purposes of this appeal, Cooper v. Pate, 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964), the complaint provides the sparse factual record for this appeal. Walter G. Wade, Gene A. Stevens, John Bentley and Dennis Mathieu, are all former employees of the Globe Union battery plant in Bennington, Vermont,[1] where they casted and assembled lead batteries. During their employ the appellants were exposed to airborne lead particulate, a by-product of the manufacture of lead batteries. As a result of such exposure they sustained permanent neurological injury and disability. The heart of their complaint alleged that:
 
 
 3
 9. Nevertheless, in intentional disregard of such citations and in intentional disregard for the health and safety of its employees and with specific intent to cause injury to its [plaintiff-employees] ..., Defendant Globe Union
 
 
 4
 a. [k]nowingly caused and allowed its air exchange and purification systems to cease operation and thereby exposed its workers ... to toxic levels of lead particulate for a period of time in excess of six months;
 
 
 5
 b. [k]nowingly failed to heed the levels of lead particulate it was then recording and repair or replace its defective air exchange and purification systems and thereby intentionally subjected its employees ... to levels of lead particulate which were known to be hazardous to health ...;
 
 
 6
 c. [k]nowingly failed to warn its employees ... of the altered levels of lead particulate then present in the air within the factory and of the substantial health risks thereby created; [and]
 
 
 7
 d. [k]nowingly failed to advise its employees ... that their physical and clinical symptoms were produced by acute lead poisoning at a point in time before lead concentrations ... had reached a level which would produce permanent injury and disability.
 
 
 8
 J.App. at 6-7 (emphasis added). The appellants alleged that Globe Union's acts constituted "specific intent" to expose its employees to hazardous lead levels. The district court decided that the appellants' complaint lacked sufficient facts to state a common law tort action, J.App. at 41, and granted the defendant's motion. We disagree.
 
 
 9
 The parties agree that this diversity action is governed by Vermont law. The defendant argues that the plaintiffs have no state law tort action because the Vermont Workmen's Compensation Act provides an exclusive remedy for an employee's "personal injury by accident arising out of and in the course of his employment ...." Vt.Stat.Ann. tit. 21 Secs. 618, 622 (1978)[2] (emphasis added). The Vermont Supreme Court has broadly construed the scope of this Act to include all work-related injuries that result from employers' negligence. Kittell v. Vermont Weatherboard Inc., 138 Vt. 439, 417 A.2d 926 (1980) (per curiam). In Kittell, an employer failed to warn his employees that he had denuded a saw of all safety devices. 138 Vt. at 440, 417 A.2d at 926. Kittell was severely injured when a splinter flew from the saw into his eye. Id. He filed a complaint alleging that his injuries were due solely to the employer's wanton and willful acts and omissions. Id. In affirming the lower court's grant of a motion to dismiss, the Vermont Supreme Court stated "[n]othing short of a specific intent to injure falls outside the scope of the Act." 138 Vt. at 441, 417 A.2d at 927 (citations omitted).
 
 
 10
 The appellants' complaint catalogues the employer's acts of omission and commission that contributed to their injuries. They argue that such allegations suffice to show the employer's "specific intent to injure" his employees, thereby skirting the exclusivity provisions of the Vermont Workmen's Compensation Act.
 
 
 11
 A properly pleaded complaint under the Federal Rules of Civil Procedure contains "a short and plain statement of the claim showing that the pleader is entitled to relief ...." Fed.R.Civ.P. 8(a)(2). Under the liberal theory of notice pleading in the federal rules, a complaint need not state "facts" or "ultimate facts" or "facts sufficient to constitute a cause of action."[3] 2A J. Moore & J. Lucas, Moore's Federal Practice p 8.13 at 8-101 (2d ed.1982). See also United States v. Employing Plasterers Ass'n., 347 U.S. 186, 188, 74 S.Ct. 452, 453, 98 L.Ed. 618 (1954). The appellants' complaint alleged that Globe Union repeatedly ignored citations for safety violations and knowingly exposed its employees to hazardous lead levels for an extended period of time. We find that such allegations gave the defendants adequate notice of the grounds for relief and therefore satisfy the requirement of Fed.R.Civ.P. 8(a).
 
 
 12
 Dismissal of a complaint before discovery is a drastic step. It is a device that must not be employed " 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.' " Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), quoting Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-02, 2 L.Ed.2d 80 (1957); see also Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir.1980). However improbable, it is not beyond the realm of possibility that Globe Union intentionally neglected its defective air purification system so as to impact adversely on its employees. In granting the appellee's 12(b)(6) motion to dismiss, the district court underscored the importance of disposing of frivolous claims. The court may have been influenced by the absence in the complaint of any indication of a motive for the allegedly injurious conduct. The complaint gives no reason why this employer would want to injure his employees. But this void, which would have probative value with the factfinder at trial and might be important in deciding whether there is a genuine issue of material fact for purposes of a Rule 56 motion, is not a factor to be considered on this Rule 12(b)(6) motion. It may develop, as appellants concede, that they will be unable to establish the requisite "specific intent" to harm. See Adato v. Kagan, 599 F.2d 1111, 1117-18 (2d Cir.1979). But that is not the test that must be met for a complaint to survive a Rule 12(b)(6) attack. That the appellants are unlikely to prevail does not justify denying them an opportunity to litigate their claims. Egelston v. State University College, 535 F.2d 752, 755 (2d Cir.1976). The complaint meets the requirements of Fed.R.Civ.P. 8(a) and expressly alleges the employer's "specific intent" to injure, thereby skirting the exclusivity provisions in the Vermont Workmen's Compensation Act. Consequently, it suffices to state a cause of action.
 
 
 13
 Reversed and remanded for further proceedings.
 
 
 
 [1]
 At the time of appellants' employment their employer was known as Globe Union. Now it is known under the name of Johnson Controls, Inc
 
 
 [2]
 This is a diversity case in which all the parties, as well as the district court, agree that Vermont's substantive law governs the decision
 
 
 [3]
 Johnson Controls' motion for a protective order precluded all discovery, placing plaintiffs at a severe disadvantage in alleging detailed facts. See Schlesinger Investment Partnership v. Fluor Corp., 671 F.2d 739 (2d Cir.1982) ("Because facts such as these are rarely available at the outset of litigation, 'summary judgment should rarely be granted ... when the plaintiff has not had an opportunity to resort to discovery procedures.' "). Id. at 742-43, quoting Schoenbaum v. Firstbrook, 405 F.2d 215, 218 (2d Cir.1968) (en banc), cert. denied sub nom. Manley v. Schoenbaum, 395 U.S. 906, 89 S.Ct. 1747, 23 L.Ed.2d 219 (1969). See also Quinn Syracuse Model Neighborhood Corp., 613 F.2d 438, 445 (2d Cir.1980))