Leon R. KOZIOL, Plaintiff,

v.

Edward A. HANNA, Utica Mayor; and
City of Utica, Defendants.

No. 5:00–CV–314.

United States District Court,
N.D. New York.

Aug. 1, 2000.

Leon R. Koziol, New York, NY, for Plaintiff pro se.

Office of Corporation Counsel, Attorney for Defendants, City of Utica, Utica, NY, John P. Orilio, of Counsel.

### MEMORANDUM DECISION AND ORDER

HURD, District Judge.

## I. *INTRODUCTION*

Presently before the court are the defendants' motion to dismiss for lack of subject matter jurisdiction, pursuant to Fed.R.Civ.P. 12(b)(1), and/or for failure to state a cause of action, pursuant to Fed. R.Civ.P. 12(b)(6). Plaintiff opposes. Oral argument was heard on May 12, 2000, in Utica, New York. Decision was reserved.

## II. *FACTS*

Defendant Edward A. Hanna ("Hanna") was the mayor of the City of Utica, New York ("the City").[1] Leon R. Koziol ("Koziol" or "plaintiff") brought this action pursuant to 42 U.S.C. § 1983 and the First and Fourteenth Amendments of the United States Constitution against Hanna and the City. Plaintiff seeks declaratory, injunctive and monetary relief as well as costs.

For the purposes of this motion, the following facts taken from the complaint are assumed to be true. Koziol was appointed Corporation Counsel by Hanna on December 8, 1996. At the time it was a part-time position which allowed Koziol to engage in the private practice of law. He took this position subject to a requirement that he "limit all communications to select media as defined by mayoral directives from time to time." Compl. ¶ 28.

Between September 1996 and March 1997, and again between December 1999 and the filing of this Complaint, Hanna ordered City employees not to speak with various media organizations. These "gag orders" were instituted to retaliate against select media for reporting on newsworthy events occurring in the City. During the first period, as Corporation Counsel, Koziol evaluated the "gag order" and determined it to be unconstitutional.

A large fire occurred in the City on December 4, 1996 which resulted in injuries to members of the City Fire Department. Hanna authorized Koziol to generate a report on the incident as part of the City's new risk management program. In addition to Koziol's report, a panel of three local residents completed a report ("the panel's report"), and the Assistant Fire Chief issued his own report. The three reports "conflicted in material part with one another," with the panel's report being very critical of the Fire Department administration. *Id.* ¶ 34. Without first consulting him, Hanna included the panel's report as part of plaintiff's report. A local newspaper printed a story which treated both reports together and gave the "appearance that plaintiff had sponsored, authored or otherwise approved of the contents of the panel report." *Id.* ¶ 36. Koziol felt compelled to correct any misconceptions on the authorship of the reports and spoke directly to Hanna regarding this need. Plaintiff then issued public statements regarding the reports in violation of the "gag order." Prior to these statements, Hanna praised Koziol's performance as Corporation Counsel describing him as an "honorable, dedicated and skilled legal technician." *Id.* ¶ 45.

After issuing the public statements concerning the fire reports, Hanna immediately implemented a series of measures orchestrated to force Koziol from office. First, plaintiff was excluded from department meetings on the proposed City budget.

---

**1.** At the time of the filing of the complaint and the filing of the memorandums of law for and against the motion to dismiss, Edward A. Hanna was the mayor of the City. Since that time, Hanna has resigned his position. However, a motion to dismiss in accordance with Fed.R.Civ.P. 12(b) requires acceptance of the facts alleged in the complaint and does not allow for additional evidence to be accepted. *Friedl v. City of New York,* 210 F.3d 79, 83 (2d Cir.2000).

Next, Hanna adjusted the position of Corporation Counsel to full-time status to force plaintiff from the job. When the Corporation Counsel position was part-time, Koziol made commitments to his private law practice so that he was not able to serve on a full-time basis. Finally, Hanna and others "raked up negative performance issues as a pretext for termination." *Id.* ¶ 47. These actions forced plaintiff to leave his position as Corporation Counsel.

Koziol's positive reputation in the community was damaged by the situation surrounding his time as Corporation Counsel. Hanna found fault with plaintiff's work to foster the mayor's own policies. Plaintiff contends he had a "legitimate expectation of continued employment" and a right to at least maintain his positive career reputation. *Id.* ¶ 76. As a result of his experience as Corporation Counsel, Koziol has been forced to restore his reputation.

In March of 1997, shortly after Koziol was forced from office, the "gag order" was lifted. However, after winning re-election, Hanna re-instituted the "gag order." During the second, and more severe "gag order," plaintiff's private law practice was harmed because of the time lag in obtaining city hall and police records. In particular, the time lag played an adverse role in one of Koziol's private practice cases. Plaintiff also has been unable to secure information for publication of his newsletter "Common Cents" as a result of the "gag order." Finally, the "gag order" decreased the ability of neighborhood watch groups to promote crime prevention and led to an increase of crime in the City.

In addition to their motion for dismissal, the defendants also seek sanctions against Koziol under Fed.R.Civ.P. 11. Defendants allege there is no basis for plaintiff's claims and the action was brought merely to harass Hanna. To support their case for sanctions, defendants submit a letter from plaintiff's law firm threatening to disclose taped conversations between the parties if the case does not settle. (Orilio Aff. Ex. C.)

## III. DISCUSSION

### A. Plaintiff's Affidavit

During a 12(b) motion, "a district court errs when it 'consider[s] affidavits and exhibits submitted by'" a party. *Friedl,* 210 F.3d at 83 (quoting *Kopec v. Coughlin,* 922 F.2d 152, 155 (2d Cir.1991)). A district court also cannot rely on any "factual allegations contained in legal briefs or memoranda." *Id.* If any facts outside the pleadings are presented, "a district court must either 'exclude the additional material and decide the motion on the complaint alone' or 'convert the motion to one for summary judgment under Fed.R.Civ.P. 56 and afford all parties the opportunity to present supporting material.'" *Id.* (quoting *Fonte v. Board of Managers of Continental Towers Condominium,* 848 F.2d 24, 25 (2d Cir.1988)). Plaintiff's answering affidavit is excluded from consideration for the purposes of this motion. This motion will be considered solely on the pleadings.

### B. Motion to Dismiss for Lack of Subject Matter Jurisdiction

#### 1. Federal Jurisdiction

█ A district court may properly dismiss a case for lack of subject matter jurisdiction if the court "lacks the statutory or constitutional power to adjudicate it." *See Makarova v. United States,* 201 F.3d 110, 113 (2d Cir.2000); *see also* Fed. R.Civ.P. 12(b)(1). "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

█ For a court to have subject matter jurisdiction, "there must be some minimum degree of substantiality or non-frivolity to the federal claim. If the [federal] claim is obviously without merit or wholly frivolous the federal court may dismiss for want of jurisdiction." *Nolan v. Meyer,* 520 F.2d 1276, 1278 (2d Cir.1975)(quoting *Hagans v. Lavine,* 415 U.S. 528, 537–38, 94

S.Ct. 1372, 39 L.Ed.2d 577 (1974)); *see also Bell v. Hood,* 327 U.S. 678, 682–83, 66 S.Ct. 773, 90 L.Ed. 939 (1946)("[A] suit may sometimes be dismissed for want of jurisdiction where the alleged [federal] claim ... is wholly insubstantial and frivolous.") "Dismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.'" *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 89, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998)(quoting *Oneida Indian Nation of N.Y. v. County of Oneida,* 414 U.S. 661, 666, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974)).

■ Koziol claims he was forced from employment for violating a policy of prior restraint on the speech of City employees. He also claims he was retaliated against for exercising his constitutional rights. The allegations pled in the complaint, if proven by credible evidence, form a claim based on the United States Constitution. The pleadings allege a valid and substantial claim, and this court may hear the case based on federal question jurisdiction.

### 2. *Standing*

■ The plaintiff must also have standing for a court to exercise subject matter jurisdiction. *See Moore v. Paine-Webber, Inc.,* 189 F.3d 165, 169 n. 3 (2d Cir.1999). Like all motions brought pursuant to Fed.R.Civ.P. 12(b), the court must assume all the allegations in the complaint are true during a challenge to standing. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). There are three requirements for standing. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). "First, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest." *Id.* This injury must be concrete and particularized. *See id.; Allen v. Wright,* 468 U.S. 737, 756, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). In

other words, "the injury must affect the plaintiff in a personal and individual way." *Defenders of Wildlife,* 504 U.S. at 560 n. 1, 112 S.Ct. 2130. The injury must also be actual or imminent, and not merely conjectural or hypothetical. *See id.* at 560, 112 S.Ct. 2130; *Whitmore v. Arkansas,* 495 U.S. 149, 155, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990). Second, the conduct complained of must cause the injury. "[T]he injury has to be 'fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court.'" *Defenders of Wildlife,* 504 U.S. at 560, 112 S.Ct. 2130 (quoting *Simon v. Eastern Ky. Welfare Rights Org.,* 426 U.S. 26, 41–42, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976)). Third, it "must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Id.* at 561, 112 S.Ct. 2130 (quoting *Simon,* 426 U.S. at 38, 96 S.Ct. 1917).

#### a. *First Cause of Action*

■ Koziol's first cause of action satisfies the requirements for standing. First, the alleged injury is particularized, concrete and actual. Koziol was forced from his position as Corporation Counsel for violating the "gag order." This was an actual injury suffered only by plaintiff and affected his financial well-being. Second, the alleged action of Hanna did cause the injury. Hanna instituted the "gag order" and personally enacted measures to force plaintiff from office. It was these retaliatory actions, spear-headed by Hanna, which directly led to plaintiff's departure from his position. Finally, the injuries complained of can be redressed by a favorable verdict to the plaintiff. If there is a favorable verdict, plaintiff could receive compensation for the wages lost after being forced from office. This monetary award could redress the injuries stemming from plaintiff's departure from office.

#### b. *Second Cause of Action*

■ Koziol's second cause of action fails to satisfy the elements of standing.

The injury must be particularized and actual. Koziol asserts he has been forced to obtain subpoenas in order to receive simple reports from the City government. The requirement that people obtain City reports through Freedom of Information Law ("FOIL") requests is universal. It covers all citizens as well as the media. Therefore, there is no particularized injury to Koziol. He simply is forced to use the same procedures that the media and other private citizens must follow, and therefore, does not meet the first criteria for standing. Plaintiff alleges that one person was able to obtain a report "on his own." (Compl.¶62.) This does not show particularized injury to the plaintiff. Plaintiff does not allege this person was able to obtain the report without using the subpoena process. Even if plaintiff had alleged that this person had obtained a report without using a FOIL request, it would not show personalized injury since all others must use the FOIL procedure.

Plaintiff further claims he was injured when the FOIL requirement contributed to the loss of one of his cases in private practice. However, Koziol simply states that the "gag order policy played an adverse role" in one of the civil cases handled by his office. *Id.* ¶ 63. Koziol does not set forth a claim that the delay directly caused an injury by, for example, affecting his ability to prepare for trial or causing him not to have additional evidence available at trial. Since Koziol did not state how the delay in any way affected his case, the second element of causation has not been satisfied.

#### c. *Third Cause of Action*

■ Koziol also fails to fulfill the requirements of standing to bring his third cause of action. This cause alleges the FOIL requirement inhibits plaintiff's ability to publish his newsletter, "Common Cents." Once again, Koziol has not suffered a particularized injury. All forms of media must use the FOIL procedures to obtain information from City sources. Koziol claims that as a result of the "gag order," he has been unable to gather information for a newsletter he publishes. However, this "gag order" does not prohibit plaintiff from obtaining information from City sources. Instead, it requires the use of a FOIL request which still allows Koziol to gather the necessary information. Koziol's newsletter is not published on a daily basis where a FOIL request would be burdensome, but is instead only published periodically. Therefore, Koziol has suffered no injury since he is still able to gather any information for publication in a timely fashion.

#### d. *Fourth Cause of Action*

■ Koziol does not have standing to bring his fourth cause of action which alleges that neighborhood watch organizations cannot effectively operate because they are unable to obtain reports detailing where crimes have occurred. As a result of the decreased effectiveness of these organizations, plaintiff claims that crime has increased throughout the City. An increase in city-wide crime is not a particularized injury as required by the first element. All members of the community are injured by an increase in crime. In addition, any connection between the "gag order," the decrease in effectiveness of neighborhood watch groups, and an increase in crime is purely conjectural. It is not a concrete and personal injury as required for standing. Next, any increase in crime is directly attributable to two independent groups not a party to this suit: criminals and police officers. The actions of criminals increase the amount of crime in the City, and any increase can almost solely be traced to this group. The main combatants of crime, the police, still have complete access to crucial information. Finally, there is no injury since the neighborhood watch groups could also use a FOIL request to obtain police reports.

#### e. *Fifth Cause of Action*

■ Plaintiff claims that his liberty interests in his positive reputation have been

sacrificed. This is a concrete and particularized injury which satisfies the requirement for "injury in fact." Mr. Koziol is seriously effected by the damage to his professional reputation. According to the complaint, this injury can be directly attributed to the actions of Hanna. Thirdly, this injury could be redressed by a favorable verdict. A monetary award could compensate plaintiff for the damage done to his reputation and injury to his private practice.

#### f. *Standing to Represent the Media, City Employees and the Public*

Plaintiff's second, third and fourth causes of action attempt to bring suit on behalf of large groups including the Media, current City employees, and the general public. "[T]he 'injury in fact test' requires . . . that the party seeking review be himself among the injured." *Lee v. Board of Governors of the Fed. Reserve Sys.*, 118 F.3d 905, 912 (2d Cir.1997)(quoting *Sierra Club v. Morton*, 405 U.S. 727, 734–35, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972)). It is not enough to have some interest in the controversy, an "imminent, concrete and particularized injury" is necessary. *Id.* at 912.

Plaintiff does not have standing to bring suit on behalf of a group of which he is not a part. It is not enough that Koziol may have an interest in the claims of the media or City employees, he must have suffered concrete and personal injuries. Even if these groups were injured as a result of the "gag order," plaintiff has not been directly injured so he does not have standing to bring suit. Since Koziol is no longer a City employee, he cannot bring suit on behalf of his former coworkers claiming their speech is being restrained. Plaintiff is suffering no injury, and his speech is no longer constrained by the "gag order." Therefore, Koziol lacks standing to bring suit on behalf of those whose speech may be constrained.

Secondly, Koziol is not a member of the media which may be injured by the "gag order." As discussed above, plaintiff's publication is not injured by the requirement that the media use FOIL procedures to obtain information from the City government. While members of the media who disseminate information on a daily basis may be injured by the "gag order" and FOIL requirement, Koziol is not a member of this group. Therefore, he does not have standing to bring a suit on their behalf.

Plaintiff also attempts to bring suit for violation of the trust between the public and Hanna. There is no injury to a legally protected interest for this violation. Citizens are still able to obtain information from the City government through FOIL requests. The general public has no legally protected interest in receiving verbal information from the government. The right to receive information is governed by the New York state FOIL. Therefore, the "gag order" has not injured the public.

### B. *Motion to Dismiss for Failure to State a Claim*

#### 1. *Standard*

A cause of action shall not be dismissed for failure to state a claim under Fed. R.Civ.P. 12(b)(6), "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley*, 355 U.S. at 45–46, 78 S.Ct. 99. In considering a motion brought pursuant to Fed.R.Civ.P. 12(b), the court must assume all of the allegations in the complaint are true. *See id.* In reviewing the sufficiency of a complaint at the pleading stage, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Where a motion to dismiss is made prior to any discovery or the filing of an answer, the court is loath to dismiss the complaint, regardless of whether the plaintiff is unlikely to prevail, unless the defendant can

demonstrate that plaintiff is unable to prove facts which would entitle him to relief. *See Wade v. Johnson Controls, Inc.,* 693 F.2d 19, 22 (2d Cir.1982); *see also Egelston v. State Univ. College at Geneseo,* 535 F.2d 752, 754 (2d Cir.1976).

### 2. *First Amendment Claims*

 Koziol's first cause of action states that he was forced to leave his position for violating Hanna's "gag order." The premise that government employees "relinquish the First Amendment rights they would otherwise enjoy as citizens to comment on matters of public interest" has been rejected. *Pickering v. Board of Educ. of Township High Sch. Dist. 205, Will County,* 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968)(stating teachers have right to speak out about operations of public schools). Therefore, if the speech could be characterized as "any matter of political, social or other concern to the community" it would be protected. *Morris v. Lindau,* 196 F.3d 102, 109 (2d Cir.1999). However, "the employee's interest in expressing herself on this matter must not be outweighed by any injury the speech could cause to 'the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" *Waters v. Churchill,* 511 U.S. 661, 668, 114 S.Ct. 1878, 128 L.Ed.2d 686 (1994)(quoting *Pickering,* 391 U.S. at 568, 88 S.Ct. 1731). The particular statements by Koziol regarding the fire investigation were a matter of public interest. These remarks related to a government report surrounding an event which led to the injury of a number of City employees. This was a matter of public concern to many members of the community.

### 3. *Prior Restraint*

 Koziol claims Hanna instituted a policy of prior restraint on city employees. "Only where the government imposes a requirement of advance approval or seeks to enjoin speech can there be prior restraint." *Dial Info. Servs. Corp. v. Thornburgh,* 938 F.2d 1535, 1543 (2d Cir. 1991). The government has a high burden when there is a prior restraint of expression. *See United States v. National Treasury Employees Union,* 513 U.S. 454, 468, 115 S.Ct. 1003, 130 L.Ed.2d 964 (1995). "[T]he Government must show that the interests of both potential audiences and a vast group of present and future employees ... are outweighed by that expression's 'necessary impact on the actual operation' of the Government." *Id.* (citing *Pickering,* 391 U.S. at 571, 88 S.Ct. 1731). According to Koziol, there was an attempt by Hanna to preclude the speech of city employees. Employees were directed to speak only after authorization from Hanna. The burden on the government to justify a policy of prior restraint is high. Defendants have offered no explanation for the policy which would satisfy this heavy burden at this stage.

### 4. *Retaliation*

 Koziol also contends that the actions which forced him to leave his job as Corporation Counsel were in retaliation for his violation of the "gag order." This retaliatory claim must pass the *Pickering* balancing test which weighs the interests of the employee against the interests of the government as an employer. *See Pickering,* 391 U.S. at 571, 88 S.Ct. 1731. Koziol's allegations that his firing came after his protected speech are enough to withstand the current motion to dismiss. Prior to the violation of the "gag order," Hanna praised plaintiff's work. It was not until after Koziol spoke out about the fire that Hanna began to implement the actions forcing plaintiff's departure. In addition, Koziol's speech did not heavily disrupt the government's ability to function so as to decisively swing the *Pickering* balance in the Defendants' favor. These allegation provide the foundation in the pleadings necessary to withstand the current motion to dismiss.

### 5. *Policy Maker Exception*

██ Defendants contend that Koziol is not entitled to First Amendment protection because he was a policy maker. An employee's status as a policy maker is a major factor in the *Pickering* balancing test. "[E]xpressive activities of a highly placed supervisory, confidential, policy-making, or advisory employee will be more disruptive to the operation of the workplace than similar activity by a low level employee with little authority or discretion." *McEvoy v. Spencer*, 124 F.3d 92, 103 (2d Cir.1997). "[W]here the employee holds an extremely confidential or highly placed advisory position, it would be unlikely if the *Pickering* balance were to be struck in his favor." *Id.* However, it does not "automatically tilt the *Pickering* balance in an employer's favor." *Id.*

██ Koziol's position as Corporation Counsel made him a policy maker for the City. Koziol directed the City's legal department and certified all City contracts and conveyances. In addition, he served on numerous City boards and agencies. Nevertheless, plaintiff's speech was not extremely disruptive to the operations of the City's government. According to the complaint, Koziol only spoke out to correct a misconception regarding the authorship of a report. He did not undermine the operations of government or criticize the work of other City government officials. This case differs from others where a policy maker's dismissal was upheld for speaking out against the operations or policies of the government. For instance, in the *McEvoy* case, a police chief was found to be a policy maker and his demotion was upheld after he spoke out about problems within the police department. *See id.* at 104–05. Koziol did not speak about the functioning of any branches of the City government, he merely corrected a mistake made on the authorship of a report. Thus, the policy maker exception still does not tip the *Pickering* balancing test in the favor of the defendants.

██ "[P]olitical affiliation is a valid employment criterion for jobs held by 'policy-making' or 'confidential' employees." *Butler v. New York State Dep't of Law*, 211 F.3d 739, 743 (2d Cir.2000). However, this motive is limited only to dismissals based on political beliefs. *See McEvoy*, 124 F.3d at 98. It does not apply where the forced dismissal was based solely on contested speech. *See id.* Koziol was a member of the same political party as Mayor Hanna, and neither he nor Hanna claims that plaintiff was fired for his political beliefs. Therefore, the political affiliation exception to First Amendment protection is not applicable.

### 6. *Equal Protection*

Plaintiff's equal protection claims will not be addressed since the only cause alleging these violations has been dismissed for lack of standing.

### 7. *Liberty Interest*

██ In his fifth cause of action, Koziol claims that his liberty interest in his reputation has been injured. "For a government employee, a federal cause of action for deprivation of a liberty interest arises when the alleged defamation occurs in the course of some negative alteration of the employee's status." *Morris*, 196 F.3d at 114. The defamation must take place near in time to the negative employment action. *See id.* Koziol alleges that, but for his violation of Hanna's prior restraint policy, he would have fulfilled all the requirements for continued employment and been entitled to complete his term as Corporation Counsel. However, after plaintiff's violation of the "gag order," Hanna fabricated negative stories about the plaintiff's job performance to force him from office. Koziol claims these falsehoods, made in the time immediately surrounding his departure, damaged his professional reputation in the community. If true, this creates a valid cause of action.

## C. *Municipal Liability—City of Utica*

In order to hold a municipality liable, a plaintiff must prove the "defendants' acts amounted to a policy or practice the municipality had adopted." *Id.* at 113. This policy must be "officially adopted and promulgated by that body's officers." *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The decisions of "officials 'whose acts or edicts may fairly be said to represent official policy'" may lead to municipal liability. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986)(quoting *Monell*, 436 U.S. at 694, 98 S.Ct. 2018).

Unquestionably, the mayor of the City qualifies as a "policy making authority." If any one individual can be said to have this authority, it is the highest elected official of the City. If the Corporation Counsel of the City is a policy maker, as the defendants argue, then the mayor surely must also qualify as a policy maker. Therefore, his decisions subject the City to civil liability. Hanna's blanket "gag order" restrained the speech of all employees of the City. It was not applied only to Koziol or the Corporation Counsel's office. It was enforced at various departments in the City including the legal and police departments. This demonstrates that the order was adopted and became an official policy of the City. If Koziol can prove he was forced to resign for violating this official policy, then he may be entitled to relief from the City.

## D. *Qualified Immunity—Edward A. Hanna*

Qualified immunity insulates a governmental official performing discretionary functions from liability so long as his "'conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have

known.'" *Eng v. Coughlin*, 858 F.2d 889, 895 (2d Cir.1988)(quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). The qualified immunity defense will not be overcome when the rights are abstract or indefinite. *Eng*, 858 F.2d at 895. Three factors must be considered in determining whether a right was clearly established at the time of the defendant's act:

> (1) whether the right in question was defined with "reasonable specificity"; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.

*Jermosen v. Smith*, 945 F.2d 547, 550 (2d Cir.1991). The inquiry is, therefore, whether the conduct at issue was objectively legally reasonable in light of the law at that time. *See Anderson*, 483 U.S. at 646, 107 S.Ct. 3034; *Mozzochi v. Borden*, 959 F.2d 1174, 1177 (2d Cir.1992). "If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." *Harlow*, 457 U.S. at 818–819, 102 S.Ct. 2727.

Prior to the time in question, it was clearly established "that government employees had a right under the First Amendment, though not an unlimited right, to speak on matters of public concern." *Frank v. Relin*, 1 F.3d 1317, 1328 (2d Cir.1993); *see also Pickering*, 391 U.S. at 568, 88 S.Ct. 1731; *Walsh v. City of Auburn*, 942 F.Supp. 788, 800 (N.D.N.Y.1996)(decided Oct. 15, 1996).[2]

---

**2.** Koziol claims *Walsh v. City of Auburn* is the case he used to determine that the blanket

"gag order" was unconstitutional while he was Corporation Counsel. Plaintiff further

Established case law at the time in question showed a blanket policy forbidding all public speech by City employees violated constitutional rights. Therefore, Hanna, judged as an objectively reasonable public official, should have known that a City employee had at least some right to speak on matters of public concern. Koziol, in his position as chief legal officer of the City, also explained to Hanna his belief that the "gag orders" violated established rights. This further illustrates that Hanna reasonably should have known the "gag order" violated constitutional rights. As a result, Hanna is not protected against this suit by qualified immunity.

The defendants argue that Hanna should be protected by qualified immunity since it was not clearly established there was no policy maker exception in *Pickering* free speech cases at the time plaintiff was forced to resign. Since the *McEvoy* case had not yet been decided, the Second Circuit case of *Kaluczky v. City of White Plains*, 57 F.3d 202 (2d Cir.1995), must be looked at on the issue of a policy maker exception.

> While there is no explicit *Elrod [v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) ] ... policymaker exception to the *Pickering* line of cases, the governmental interests recognized in both lines of cases are essentially the same. A public employer has an important interest in promoting efficiency, ensuring loyalty, and fostering positive morale ... First Amendment constitutional protection for policymakers is often slight.

*Id.* at 210. This case clearly states there is no policy maker exception for free speech cases. A reasonable public official should have known there was no unquestionable right to discharge policy makers for their speech. The interests of the government, as an employer, must outweigh the constitutionally protected interests of the employee. *See Pickering,* 391 U.S. at 571, 88 S.Ct. 1731. However, the

*Kaluczky* case does state that a policy maker will only be given "slight" protection. *See Kaluczky,* 57 F.3d at 210. Nevertheless, a policy maker still receives some First Amendment free speech protection.

In the current case, the controversial speech by plaintiff did not disrupt the functioning of the City government. It was aimed merely at correcting a mistake of authorship. According to the complaint, Koziol did not say anything negative about his superiors or anything which would lead to a decrease in morale. Therefore, the government's interest in restricting Koziol's speech was also "slight." Given that a policy of prior restraint was allegedly in place at the time, defendants needed to show more than a slight interest in restricting plaintiff's speech. A policy of prior restraint raises the burden on the government. *See National Treasury Employees Union,* 513 U.S. at 468, 115 S.Ct. 1003. This case, decided prior to the time in question, should have informed a reasonable public official he must meet a higher standard where there is a prior restraint on speech. Given the lack of damage done to the City by the protected speech and the high burden on the City when there is a prior restraint of speech, a reasonable public official should have known that forcing Koziol from office would not automatically pass the *Pickering* balancing test. Therefore, Hanna is not entitled to qualified immunity.

### E. *Injunctive Relief*

 Plaintiff requests an injunction to prohibit the defendants from enforcing the "gag order." "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects." *Defenders of Wildlife,* 504 U.S. at 564, 112 S.Ct. 2130 (internal quotations omitted). Koziol's remaining claims do not warrant in-

---

alleges this case was the basis for the recis-

sion of the first alleged "gag order."

junctive relief. No further harm will occur to plaintiff if an injunction is not granted. All acts which give rise to the surviving claims are completed. There is no possibility of Koziol being punished for violating a "gag order" since he has already left his position as Corporation Counsel. As discussed above, plaintiff has no standing to bring suit on behalf of current City employees, who may still be constrained by the "gag order."

### F. *Rule 11 Sanctions*

█ Sanctions are not proper where a party's claims "are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing or the establishment of new law." Fed.R.Civ.P. 11(b)(2). Since plaintiff has two valid claims, this action cannot be considered frivolous. In addition, three of Koziol's claims in his complaint, while not brought with proper standing, do not rise to the level of frivolousness necessary for Rule 11 sanctions.

█ Rule 11 sanctions are available if a claim is "presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Fed.R.Civ.P. 11(b)(1). Defendants contend that Koziol brought this action to harass Hanna. To support this claim, defendants submit a letter from plaintiff's firm threatening to attempt to admit damaging evidence if the case is not settled. This letter alone does not show that the claim was brought with improper purpose.

## IV. *CONCLUSION*

For the foregoing reasons, it is hereby ORDERED that

1. Defendants' motion is GRANTED in part and DENIED in part;

2. Defendants' motion is GRANTED as follows:

a. The second, third, and fourth causes of action are DISMISSED; and

b. The claim for injunctive relief is DISMISSED;

3. Defendants' motion is DENIED with respect to:

a. The first and fifth causes of action;

b. City of Utica;

c. Qualified immunity;

d. Rule 11 sanctions; and

4. The defendants shall file and serve an answer to the first and fifth causes of action in the complaint on or before August 21, 2000.

IT IS SO ORDERED.